STATE OF NORTH CAROLINA v. ALLEN SPENCER, ALVIN SPENCER, HENRY JOHNSON, JR., PRESTON SIMMONS, BENJAMIN PHELPS AND SAMUEL BRYANT

No. 46

(Filed 13 May 1970)

1. **Jury § 7; Constitutional Law § 29— quashal of jury venire — opportunity to offer evidence**

    A contention by Negro defendants that the trial court violated their constitutional rights under the Fourteenth Amendment, U. S. Constitution, by denying their motion to quash the jury venire and by preventing them from making an evidentiary showing on the motion, *held* without merit, where the record affirmatively showed that (1) the trial court, at the time of the motion, offered to hear any evidence presented by defendants, but no evidence was presented; (2) the defendants had had a minimum of four months, prior to the trial and the making of the motion, in which to gather evidence in support of the motion; and (3) the jury venire consisted of 54 white persons and 20 Negroes.

2. **Constitutional Law § 29— right to jury free from racial discrimination**

    If the conviction of a Negro is based on an indictment of a grand jury or the verdict of a petit jury from which Negroes were excluded, the conviction cannot stand.

3. **Jury § 7— quashal of jury venire — burden of proof — prima facie case**

    If the motion to quash alleges racial discrimination in the composition of the jury, the burden is upon defendant to establish it; but once a *prima facie* case of racial discrimination is established, the burden of going forward with rebuttal evidence is upon the State.

4. **Jury § 7; Constitutional Law § 29— jury trial — demand for proportionate number of race**

    A defendant is not entitled to demand a proportionate number of his race on the jury which tries him nor on the venire from which petit jurors are drawn.

5. **Jury § 7— inquiry into racial discrimination — opportunity to offer evidence**

    A defendant must be allowed a reasonable time and opportunity to inquire into and present evidence regarding the alleged intentional exclusion of Negroes because of their race from serving on the grand or petit jury in his case.

6. **Criminal Law § 138; Constitutional Law § 36— punishment — appeal from district to superior court — increased sentence**

    Where the defendants appealed to the superior court from a conviction and sentence in the district court, the imposition of a greater sentence in the superior court than the sentence imposed in the district court did not violate defendants' constitutional rights under the state and federal constitutions, since the trial *de novo* in the superior court is a new trial from

beginning to end on both the law and the facts. U. S. Constitution, Amendments VI and XIV; N. C. Constitution, Art. I, §§ 13 and 17.

**7. Criminal Law § 18— conviction in district court — right of appeal to superior court**

Defendants who are convicted in the district or other inferior court are entitled to a trial *de novo* in the superior court even though their trials in the inferior court were free from error. G.S. 7A-290, G.S. 15-177.1.

**8. Highways and Cartways § 10— impeding traffic — what constitutes "standing on highway" — instructions**

The conduct of defendants in walking back and forth across a public highway for five minutes and thereby causing vehicular traffic on the highway to come to a stop, *held* within the purview of the statute making it unlawful for any person wilfully to stand upon a highway and impede the regular flow of traffic; and the trial court correctly instructed the jury that if the defendants "walked, standing and walked on the highway and did so wilfully in such a manner as to impede the regular flow of traffic, that would constitute a violation of this statute even though they were not standing still." G.S. 20-174.1.

**9. Statutes § 5— statutory construction — intent of legislature**

In construing the language of a statute the courts are guided by the primary rule that the intent of the legislature controls.

**10. Statutes § 5— statutory construction — purpose of the law**

If a strict literal interpretation of a statute contravenes the manifest purpose of the legislature, the reason and purpose of the law should control and the strict letter thereof should be disregarded.

**11. Statutes § 5— language of statute**

Where possible, the language of a statute will be interpreted so as to avoid an absurd consequence.

**12. Statutes § 10— construction of criminal statutes**

Criminal statutes must be strictly construed, but this does not mean that a criminal statute should be construed stintingly or narrowly.

**13. Highways and Cartways § 10; Criminal Law § 138— obstructing traffic — prosecution — punishment — mitigation of sentence pending appeal**

In an obstructing traffic prosecution, the sentencing of one defendant to a nine-month jail term, and the sentencing of other defendants to a six-month jail term, were within the limits allowed by G.S. 20-174.1(b) at the time judgment was pronounced; but where, pending appeal of defendants, the legislature reduced the maximum term of imprisonment under the statute to six months, the defendant who received the nine-month sentence was entitled to the mitigation of his sentence to six months. Session Laws of 1969, Chapter 1012.

**14. Criminal Law § 138— offense punishable in discretion of court — amount of punishment**

An offense punishable by "fine or imprisonment, or both, in the discre-

tion of the court" is a general misdemeanor for which an offender may be imprisoned for two years in the discretion of the court.

APPEAL by defendants from decision of the Court of Appeals upholding judgment of *Fountain, J.,* at the 23 May 1969 Session of HYDE Superior Court.

Each defendant was charged in a warrant with willfully standing upon the traveled portion of a state highway in such a manner as to impede the regular flow of traffic, a violation of G.S. 20-174.1.

Defendants were initially tried in the District Court of Hyde County and found guilty. Henry Johnson, Jr., was sentenced to sixty days in jail, suspended, and said defendant placed on probation for eighteen months on condition that he pay a fine of $75.00 and the costs, be at his residence each evening by 11:30 p.m. unless otherwise permitted by his probation officer, and abide by the usual terms and conditions of probation. The other five defendants were given sixty days in jail, suspended, and each defendant placed on probation for eighteen months on condition that each defendant pay a fine of $50.00 and the costs, be at his residence each evening by 11:30 p.m. unless otherwise permitted by his probation officer, and abide by the usual terms and conditions of probation. From these judgments defendants appealed to the Superior Court of Hyde County where they were brought to trial at the 19 May 1969 Criminal Session. The cases were consolidated by consent for purpose of trial.

Before the call of the cases, defense counsel moved to quash the jury venire and indicated a desire "to make a showing on it." The court expressed its willingness to hear any evidence defendants wished to offer on the motion but refused to delay the trial. The only evidence offered in that respect was a showing that of the total jurors present on the regular jury panel and as supplemental jurors, fifty-four were white and twenty were Negro.

The State's evidence tends to show that on 11 November 1968 the defendants, with a crowd of approximately one hundred people, were walking in a westerly direction on U. S. Highway 264 approaching the courthouse in Swan Quarter, North Carolina. The crowd proceeded to the courthouse where it remained for more than an hour demonstrating, singing, chanting and shouting. The group then started back on U. S. 264. For the first few hundred yards the crowd was orderly. Then the defendants, with a few others, began marching back and forth across the highway chanting and hollering. "It was a continual thing after they started," and continued for over ten minutes before the arrests were made. Traffic was blocked from

both directions because defendants were in the roadway marching back and forth from side to side, "raising their knees up high and rearing back as they walked and they were singing, clapping and screaming." In this fashion these defendants, and about a dozen others not involved in this case, occupied the highway for about five minutes thus forcing vehicular traffic to stop. Defendants were admonished by highway patrolmen to clear the highway and permit traffic to resume its normal flow. They ignored the admonition and continued to chant and sing while the vehicles were stopped. Defendants were thereupon placed under arrest and brought to trial.

Defendants offered no evidence but moved for judgment of nonsuit at the close of the evidence for the State. This motion was denied and, after arguments of counsel and charge of the court, the case was submitted to the jury. Defendants were found guilty as charged and the presiding judge pronounced judgment as follows: Henry Johnson, Jr., was given an active sentence of nine months in the common jail of Hyde County. The other five defendants were each given an active sentence of six months in the common jail of Hyde County. All defendants appealed to the Court of Appeals where the sentences were upheld, 7 N.C. App. 282, 172 S.E. 2d 280. Defendants thereupon appealed to the Supreme Court of North Carolina assigning errors as noted in the opinion.

*Chambers, Stein, Ferguson & Lanning, by James E. Ferguson, II, Attorneys for defendant appellants.*

*Robert Morgan, Attorney General, and Burley B. Mitchell, Jr., Staff Attorney, for the State.*

HUSKINS, J.

[1]  Prior to entering any plea the following colloquy occurred between defense counsel and the court:

"MR. FERGUSON: I want to make a motion to quash the jury venire and would like to make a showing on it.

THE COURT: If you want to offer evidence I will hear it now. I think you have had ample time.

MR. FERGUSON: I would like for the record to reflect that counsel requested an opportunity to make a showing.

THE COURT: Let the record show that and further show that the court is now willing to hear any evidence defendants wish to offer on that question and denies the motion for continuance or delay to gather evidence on the question.

MR. FERGUSON: Let the record show that the only evi-
dence we have at this time is the makeup of the jury.

THE COURT: Let the record show that of those present on
the regular jury panel and the supplemental jurors, upon a roll
call the Clerk reports that 54 are white and 20 Negro."

Defendants contend the trial court violated their right to due
process and equal protection under the Fourteenth Amendment by
denying the motion to quash and "by refusing to allow defendants
to make an evidentiary showing on their motion." All six defendants
are members of the Negro race.

At the outset, it is noted that the motion to quash was made
orally and no grounds for it were stated. The record is silent in that
respect. A jury venire may be illegal for many reasons. We can only
surmise that the motion itself suggested systematic exclusion of
Negroes from the petit jury because of their race. Although appel-
late courts are not required to speculate in such fashion, we assume
*arguendo* that the motion was intended to suggest that Negroes had
been systematically excluded from the jury box in Hyde County be-
cause of their race. We examine this assignment of error on that as-
sumption.

**[2-5]** Both state and federal courts have long approved the follow-
ing propositions:

1. If the conviction of a Negro is based on an indictment of a
grand jury or the verdict of a petit jury from which Negroes were
excluded by reason of their race, the conviction cannot stand. *State
v. Ray,* 274 N.C. 556, 164 S.E. 2d 457; *State v. Wright,* 274 N.C.
380, 163 S.E. 2d 897; *State v. Brown,* 271 N.C. 250, 156 S.E. 2d 272;
*State v. Lowry and State v. Mallory,* 263 N.C. 536, 139 S.E. 2d 870;
*Whitus v. Georgia,* 385 U.S. 545, 17 L. ed 2d 599, 87 S. Ct. 643;
*Arnold v. North Carolina,* 376 U.S. 773, 12 L. ed 2d 77, 84 S. Ct.
1032; *Eubanks v. Louisiana,* 356 U.S. 584, 2 L. ed 2d 991, 78 S. Ct.
970; *Reece v. Georgia,* 350 U.S. 85, 100 L. ed 77, 76 S. Ct. 167;
*Shepherd v. Florida,* 341 U.S. 50, 95 L. ed 740, 71 S. Ct. 549; *Cassell
v. Texas,* 339 U.S. 282, 94 L. ed 839, 70 S. Ct. 629.

2. If the motion to quash alleges racial discrimination in the
composition of the jury, the burden is upon the defendant to estab-
lish it. *State v. Ray, supra; State v. Yoes,* 271 N.C. 616, 157 S.E. 2d
386; *State v. Brown, supra; Whitus v. Georgia, supra; Akins v.
Texas,* 325 U.S. 398, 89 L. ed 1692, 65 S. Ct. 1276; *Fay v. New York,*
332 U.S. 261, 91 L. ed 2043, 67 S. Ct. 1613. But once he establishes
a *prima facie* case of racial discrimination, the burden of going for-

ward with rebuttal evidence is upon the State. *State v. Wilson,* 262 N.C. 419, 137 S.E. 2d 109; *State v. Ray, supra.*

· 3. A defendant is not entitled to demand a ·proportionate number of his race on the jury which tries him nor on the venire .from which petit jurors are drawn. *Swain v. Alabama,* 380 U.S. 202, 13 L. ed 2d 759, 85 S. Ct. 824; *State v. Wilson, supra; State v. Arnold,* 258 N.C. 563, 129 S.E. 2d 229, reversed on other grounds, 376 U.S. 773, 12 L. ed 2d 77, 84 S. Ct. 1032.

4. A defendant must be allowed a reasonable time and opportunity to inquire into and present evidence regarding the alleged intentional exclusion of Negroes because of their race from serving on the grand or petit jury in his case. *State v. Wright, supra* (274 N.C. 380, 163 S.E. 2d 897); *State v. Belk,* 272 N.C. 517, 158 S.E. 2d 335; *State v. Inman,* 260 N.C. 311, 132 S.E. 2d 613; *State v. Covington,* 258 N.C. 495, 128 S.E. 2d 822; *State v. Perry,* 248 N.C. 334, 103 S.E. 2d 404; *Miller v. State,* 237 N.C. 29, 74 S.E. 2d 513; *State v. Speller,* 230 N.C. 345, 53 S.E. 2d 294. "Whether a defendant has been given by the court a reasonable time and opportunity to investigate and produce evidence, if he can, of racial discrimination in the drawing and selection of a . . . jury panel must be determined from the facts in each particular case." *State v. Perry, supra.*

In *State v. Belk, supra* (272 N.C. 517, 158 S.E. 2d 335), defendant was initially denied but belatedly offered an opportunity by the trial judge to present evidence in support of a motion to quash on the ground that members of defendant's race were systematically excluded from the grand jury, but defendant declined to present evidence during the term in support of the motion. Held: No error. Defendant was offered an opportunity to avoid any disadvantage resulting from the initial denial. "From the record it appears doubtful that the motion was originally made in good faith, and it is quite obvious that the defendant seeks to rely upon technicalities that have no merit."

In *State v. Inman, supra* (260 N.C. 311, 132 S.E. 2d 613)., defense counsel had been employed in the case for approximately four weeks when the case was called for trial. Before pleading, defendant moved to quash the indictments on the ground that Negroes had been systematically excluded from serving on the grand jury that returned the bills against him. The court summarily overruled the motion and defendant assigned this as error. Defense counsel then asked for sufficient time to substantiate his motion and this was denied. Held: Error in refusing to grant defendant sufficient time to offer evidence in support of his motion to quash the indictments on the ground

that members of his race, by reason of their race, were systematically excluded from serving on the grand jury that returned the indictments. "Whether defendant can establish the alleged racial discrimination or not, due process of law demands that he have his day in court on this matter, and such day he does not have unless he has a reasonable opportunity to produce his evidence, if he has any."

In *State v. Covington, supra* (258 N.C. 495, 128 S.E. 2d 822), defendant was charged in a warrant drawn and served on 9 March 1962 with a violation of law which was included in the bills of indictment. The case was set for trial at the May 1962 Criminal Session, Superior Court of Union County. Defendant, a Negro, prior to pleading, moved to quash the indictments on the ground that members of the Negro race had been systematically excluded because of their race from service upon the grand jury. In his written motion defendant further moved for a reasonable time to inquire into the facts and requested the court to issue process to require certain named officers of Union County to appear in court and testify with respect to the selection of grand juries for Union County and to bring with them all books, documents, and records pertinent to the inquiry. This motion was supported by an affidavit of defense counsel. The trial court denied the motion to quash and the motion for a reasonable time to inquire into the alleged facts with respect to jury selection. Held: Defendant was denied a reasonable opportunity to produce evidence, if any such evidence existed. "Whether he can establish his contention or not, he must have his day in court on his motion to quash the indictments."

In *State v. Perry, supra* (248 N.C. 334, 103 S.E. 2d 404), defendant, a Negro doctor, was arrested 13 October 1957 on a warrant charging him with performing an abortion. He was bound over to the Superior Court of Union County after a hearing on 18 October 1957. The superior court convened on 28 October 1957 for a two-weeks term. The trial judge denied a motion to remove and ordered a special venire from Anson County to appear on 30 October 1957. On 29 October, defendant moved for a continuance and, failing that, on 30 October moved to quash the indictment. In support of the motion to quash was an affidavit of counsel to the effect that "the grand jury which indicted the defendant was unlawfully constituted for that negroes solely because of their race have been systematically excluded from serving on grand juries of Union County for many years" and that opportunity was needed "to inquire into the matter of such exclusion, and to gather evidence to present to the court on the matter." The motions for continuance and to quash the indictment were denied. Held: "After a careful examination of all the

facts in the instant case, it is our opinion that the trial court denied the defendant a reasonable opportunity and time to investigate and produce evidence, if such exists, in respect to the allegations of racial discrimination as to the grand jury set forth in the motion to quash and in the supporting affidavit. . . ."

The facts in *Belk, Inman, Covington* and *Perry* are readily distinguishable from the facts in the case before us.

[1] The facts in this case reveal that defendants were arrested on 11 November 1968. Four of them were tried in the District Court of Hyde County on 2 January 1969 and the remaining two on 15 January 1969. Attorney James E. Ferguson, II, represented defendants in their district court trials and noted an appeal to superior court. The cases were called for trial in the Superior Court of Hyde County at the next ensuing term of that court which convened on 19 May 1969. Thus it affirmatively appears from the record that more than six months had elapsed from date of arrest and more than four months from date of appeal to the superior court for trial *de novo* before a jury. Defense counsel thus had a minimum of four months in which to make his investigation, gather evidence, and subpœna records and witnesses in support of his motion to quash. It is apparent, however, that he had done nothing regarding this motion up to the moment it was made — just moments before the cases were called for trial — since all he had to offer was the makeup of the venire. And a mere showing that there were twenty Negroes on this 74-man venire is insufficient proof of systematic exclusion under any intelligent standards. See Anno. — Jury Service-Discrimination, 1 A.L.R. 2d 1292 at 1314; *State v. Brown, supra* (271 N.C. 250, 156 S.E. 2d 272); *Swain v. Alabama, supra* (380 U.S. 202, 13 L. ed 2d 759, 85 S. Ct. 824). It suggests instead that there was indeed no factual basis whatever for the motion. It seems more likely that delay in the trial was counsel's primary objective.

Under the facts of this case, counsel had ample time (four to six months prior to the date of the trial) in which to make his investigation and produce evidence, if any such evidence existed. We hold that there has been no denial of Due Process and Equal Protection in violation of the Fourteenth Amendment. This assignment is therefore overruled.

[6] Each defendant received a greater sentence in the superior court than had been imposed by the district court. Defendants contend this increase in sentence violated rights secured to them by the Sixth and Fourteenth Amendments to the Constitution of the United

States and by Article I, Sections 13 and 17, of the Constitution of North Carolina.

Article III, Section 2, of the Federal Constitution provides that "[t]he trial of all crimes . . . shall be by jury. . . ." The Sixth Amendment thereto contains the requirement that the accused in all criminal prosecutions "shall enjoy the right to a . . . trial, by an impartial jury. . . ."

Like provision for trial by jury is found in Article I, Section 13, of the Constitution of North Carolina in these words: "No person shall be convicted of any crime but by the unanimous verdict of a jury. . . . The Legislature may, however, provide other means of trial, for petty misdemeanors, with the right of appeal."

Infringement upon the constitutional right of these defendants to trial by jury is not apparent. Although initially tried in the district court before the judge without a jury, defendants had, and exercised, an absolute right to a jury trial *de novo* in the superior court pursuant to G.S. 7A-288 (now G.S. 7A-290) and G.S. 15-177.1. It is established law in North Carolina that trial *de novo* in the superior court is a new trial from beginning to end, on both law and facts, disregarding completely the plea, trial, verdict and judgment below; and the superior court judgment entered upon conviction there is wholly independent of any judgment which was entered in the inferior court. "The fact that a right of appeal was given where the defendant was convicted in the lower court without the intervention of a jury has generally been regarded as a sufficient reason, in support of the validity of such trials without a jury in the inferior tribunal, as by appealing the defendant secures his right to a jury trial, in the Superior Court, and therefore cannot justly complain that he has been deprived of his constitutional right." *State v. Pulliam,* 184 N.C. 681, 114 S.E. 394. Accord: *State v. Norman,* 237 N.C. 205, 74 S.E. 2d 602.

Conceding that they have statutory access to trial by jury in the superior court, defendants contend the exercise of that right is unduly restricted because they must run the risk of increased punishment in case the jury convicts them. This risk, they argue, is a deterrent which inhibits the free exercise of a constitutional right to trial by jury and is therefore violative of due process guaranteed by the Fourteenth Amendment and by Article I, Section 17, of the Constitution of North Carolina. Defendants insist that *State v. Stafford,* 274 N.C. 519, 164 S.E. 2d 371, and similar holdings in this and other jurisdictions, have been overruled by *North Carolina v. Pearce,* 395 U.S. 711, 23 L. ed 2d 656, 89 S. Ct. 2072, and contend *Pearce* is con-

trolling on this point. We now examine the validity of this contention in light of *Pearce*.

In *Pearce*, defendant was convicted in the Superior Court of Durham County of an assault with intent to commit rape and sentenced by the trial judge to a term of 12-15 years. After serving several years of this term, Pearce initiated a post conviction proceeding in the superior court on the ground that an involuntary confession had been admitted into evidence against him. A post conviction review was held in May 1965 before a superior court judge who entered an order denying relief. This Court allowed certiorari to review that order and awarded a new trial upon the ground that the trial court committed error in admitting said confession over defendant's objection. *State v. Pearce*, 266 N.C. 234, 145 S.E. 2d 918. Pearce was retried before another superior court judge and jury and again convicted. The second trial judge imposed a sentence of eight years which, when added to the time already served, amounted to a longer sentence in the aggregate than the twelve-year minimum originally imposed. The second sentence was upheld by this Court, 268 N.C. 707, 151 S.E. 2d 571. Pearce then obtained a writ of habeas corpus from the United States District Court for the Eastern District of North Carolina. That court held the greater sentence unconstitutional and ordered his release upon failure of the State Court to resentence him within sixty days. The Fourth Circuit Court of Appeals affirmed, 397 F. 2d 253. The United States Supreme Court granted certiorari and laid down the rule that vindictiveness must not play a part in the sentence a defendant receives at a second trial following his successful attack upon his first conviction. "And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process . . . requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." The court then required that whenever a judge imposes a more severe sentence after the second trial, "the reasons for his doing so must affirmatively appear. . . . And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

Various aspects of the decision in *Pearce* have been criticized and commended in varying degrees by the academic community. See Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606 (1965); Note, In Van Alstyne's Wake: *North Carolina v. Pearce*, 31 U. Pitt. L. Rev. 101 (1969);

Note, Higher Punishment for a Successful Appellant on Retrial: Defining the Gantlet, 23 Sw. L.J. 933 (1969); Comment, Criminal Procedure — Constitutional Limitations on Imposition of More Severe Sentence after Conviction upon Retrial, 58 Ky. L.J. 380 (1969).

We think *Pearce* is factually distinguishable and has no application here. There are many valid distinctions between a *retrial in the same court after reversal* and trial *de novo* in a higher court upon appeal — especially when the right of appeal is absolute and unconditional. Here, no defect in the first trial *caused a retrial* in superior court. Rather, the trial there was *de novo* and a matter of absolute right.

**[7]** In *Pearce*, both sentences were imposed in the same court. To get a retrial, Pearce had to attack the validity of his first sentence and show a violation of his constitutional rights committed during the first trial. Here, defendants were entitled to a trial *de novo* in the superior court even though their trials in the inferior court were free from error. G.S. 7A-288 (now G.S. 7A-290) and G.S. 15-177.1. This is an unfettered statutory right. It therefore appears that when these defendants appealed to the superior court the slate was wiped clean and the cases stood for trial in the superior court as if there had been no previous trial in the district court. Hence, in the sound discretion of the superior court judge, his sentence may be lighter or heavier than that imposed in the district court. *State v. Morris*, 275 N.C. 50, 61, 165 S.E. 2d 245, 252. Other jurisdictions which have considered this question have reached the same conclusion. *Lemieux v. Robbins*, 414 F. 2d 353 (1st Cir. 1969), cert. den. 397 U.S. 1017, 90 S. Ct. 1247, 25 L. ed 2d 432, and in *People v. Olary*, 382 Mich. 559, 170 N.W. 2d 842. To hold otherwise, and say that upon appeal the superior court judge may decrease the sentence imposed below but is precluded from increasing it, would encourage appeal to the superior court in every case. Trial in the district court would be futile and the court itself an impediment to the administration of justice. In our view, we are dealing here with wholly new sentences rather than increases in old ones.

**[6]** We hold that the decision in *Pearce*, based on a different factual situation, was never intended to apply to judgments following trials *de novo* on appeal from inferior tribunals. The fact that defendants received a greater sentence in the superior court than they received in the district court is no violation of their constitutional rights. Upon appeal from an inferior court for a trial *de novo* in the superior court, the superior court may impose punishment in excess of that imposed in the inferior court provided the punishment im-

posed does not exceed the statutory maximum. *State v. Tolley,* 271 N.C. 459, 156 S.E. 2d 858. *Pearce,* decided 23 June 1969, is not applicable. This assignment of error is overruled.

The statute under which these defendants are charged makes it unlawful for any person willfully to stand, sit or lie upon the highway or street in such a manner as to impede the regular flow of traffic. G.S. 20-174.1.

[8]    The State's undisputed evidence discloses that defendants impeded the regular flow of traffic on U. S. Highway 264 for over five minutes by marching and strutting back and forth across the highway, "raising their knees up high and rearing back as they walked." As a result, all vehicular traffic came to a stop. That the act was willful is perfectly apparent. Defendants contend, however, that the statute does not prohibit *walking* on the highway so as to impede the regular flow of traffic and challenge the following instruction to the jury by the trial judge: "If the defendants were on the highway and standing, whether they were standing still or walking is of no consequence. If they walked, standing and walked on the highway and did so willfully in such a manner as to impede the regular flow of traffic, that would constitute a violation of this statute even though they were not standing still. . . . So the question is whether the defendants, or either of them, stood by walking on Highway 264 in such a manner as to impede the regular flow of traffic, that is, to cause it to stop or to detour or to restrain the normal flow of traffic, or the regular flow of traffic, and, if so, did they do it willfully."

At issue then is whether the word "stand" as used in the statute means "standing still" as defendants insist or embraces the act of walking as contended by the State.

[9-11]    In construing the language of a statute we are guided by the primary rule that the intent of the legislature controls. "In the interpretation of statutes, the legislative will is the all important or controlling factor. Indeed, it is frequently stated in effect that the intention of the legislature constitutes the law. The legislative intent has been designated the vital part, heart, soul, and essence of the law, and the guiding star in the interpretation thereof." 50 Am. Jur., Statutes § 223. A construction which will operate to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language. *Ballard v. Charlotte,* 235 N.C. 484, 70 S.E. 2d 575. If a strict literal interpretation of a statute contravenes the manifest purpose of the legislature, the reason and purpose of the law should control and the strict letter thereof should be disregarded. *State v. Barksdale,* 181 N.C. 621, 107

S.E. 505; *Duncan v. Carpenter*, 233 N.C. 422, 64 S.E. 2d 410. And, where possible, "the language of a statute will be interpreted so as to avoid an absurd consequence. *Young v. Whitehall Co.*, 229 N.C. 360, 49 S.E. 2d 797; *State v. Scales*, 172 N.C. 915, 90 S.E. 439." *Hobbs v. Moore County*, 267 N.C. 665, 671, 149 S.E. 2d 1, 5. Furthermore, words and phrases of a statute "must be construed as a part of the composite whole and accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit." 7 Strong's N. C. Index 2d, Statutes § 5; *Underwood v. Howland, Comr. of Motor Vehicles*, 274 N.C. 473, 164 S.E. 2d 2; *Watson Industries v. Shaw, Comr. of Revenue*, 235 N.C. 203, 69 S.E. 2d 505.

[12] Of course criminal statutes must be strictly construed. *State v. Ross*, 272 N.C. 67, 157 S.E. 2d 712; *State v. Brown*, 264 N.C. 191, 141 S.E. 2d 311. But this does not mean that a criminal statute should be construed stintingly or narrowly. It means that the scope of a penal statute may not be extended by implication beyond the meaning of its language so as to include offenses not clearly described. *State v. Hill*, 272 N.C. 439, 158 S.E. 2d 329; *State v. Whitehurst*, 212 N.C. 300, 193 S.E. 657, 113 A.L.R. 740. Even so, an interpretation which leads to a strained construction or to a ridiculous result is not required and will not be adopted. *State v. Pinyatello*, 272 N.C. 312, 158 S.E. 2d 596. "While a criminal statute must be strictly construed, the courts must nevertheless construe it with regard to the evil which it is intended to suppress. And the rule that statutes will be construed to effectuate the legislative intent applies also to criminal statutes." 7 Strong's N. C. Index 2d, Statutes § 10; *State v. Brown*, 221 N.C. 301, 20 S.E. 2d 286; *State v. Hatcher*, 210 N.C. 55, 185 S.E. 435; *State v. Humphries*, 210 N.C. 406, 186 S.E. 473.

When G.S. 20-174.1 is subjected to these rules of construction, it is quite clear that the legislature intended to make it unlawful for any person to impede the regular flow of traffic upon the streets and highways of the State by willfully placing his body thereon in either a standing, lying or sitting position. A person may stand and walk, stand and strut, stand and run, or stand still. All these acts are condemned by the statute when done willfully in such manner as to impede the regular flow of traffic upon a public street or highway. The strained construction of this statute urged by defendants would lead to a ridiculous result and would completely disregard the evil which it is intended to suppress. The interpretation we adopt accords with reason and common sense and effectuates the legislative intent to prohibit and punish those who willfully place themselves upon the

streets and highways of the State in such manner as to impede the regular flow of traffic.

[9]    We hold that the challenged portion of the charge to the jury correctly applied the law to the facts and that the motion for non-suit was properly overruled. These assignments of error have no merit.

[13]    Finally, defendants contend that their sentences exceed the statutory maximum for the offense charged. They argue that the punishment for a violation of G.S. 20-174.1 is controlled by G.S. 20-176(b) as interpreted and applied in *State v. Massey,* 265 N.C. 579, 144 S.E. 2d 649. This requires an analysis of pertinent statutes and cases.

G.S. 20-176(b) limits the punishment that may be imposed for violating any of the various sections of Article 3 of Chapter 20 of the General Statutes (which includes G.S. 20-174.1) to a $100.00 fine, or sixty days in jail, or both "[u]nless *another penalty is in this article* or *by the laws of this State provided. . . .*" (Emphasis added) This statute was enacted by Session Laws 1937, Chapter 407, Section 137.

In 1965 the Legislature enacted G.S. 20-174.1 under which defendants are charged. Subsection (a) provides: "No person shall wilfully stand, sit, or lie upon the highway or street in such a manner as to impede the regular flow of traffic." Subsection (b) thereof prescribes the punishment for a violation of Subsection (a) in these words: "Any person convicted of violating this section shall be punished by fine or imprisonment, or both in the discretion of the court." This language in itself is "another penalty" and, being a part of Article 3, the punishment ceiling imposed by G.S. 20-176(b) does not apply. Had the Legislature intended G.S. 20-176(b) to govern the punishment for this offense, it would have been entirely unnecessary to enact Subsection (b). A violation of Subsection (a) is a misdemeanor and, absent Subsection (b), there would be no penalty prescribed in Article 3 for such violation. Furthermore, there would be no other penalty provided "in the laws of this State" because G.S. 14-3 is inapplicable to motor vehicle misdemeanors contained in Article 3 of Chapter 20 of the General Statutes. *State v. Massey, supra* (265 N.C. 579, 144 S.E. 2d 649). Hence, if Subsection (b) had not been enacted, the punishment prescribed by G.S. 20-176(b) would govern. But this is not the case. The Legislature provided "another penalty" by enacting Subsection (b). Since no maximum punishment is fixed by this subsection, we must look elsewhere to discover the maximum penalty authorized by use of the words "fine or imprisonment, or both in the discretion of the court."

[14]   G.S. 20-179 provides that one who drives a motor vehicle upon the public highways of the State while under the influence of intoxicants shall, for the first offense, be punished "by a fine of not less than one hundred dollars ($100.00) or imprisonment for not less than thirty (30) days, or by both such fine and imprisonment, in the discretion of the court." This language establishes a minimum, but with respect to maximum punishment the language is identical to that used in G.S. 20-174.1(b), i.e., "fine or imprisonment or both in the discretion of the court." This Court has twice held that a sentence of eighteen months was within the limits authorized by G.S. 20-179 and that an offense punishable *by fine or imprisonment, or both, in the discretion of the court* is a general misdemeanor for which an offender may be imprisoned for two years in the discretion of the court. *State v. Morris,* 275 N.C. 50, 165 S.E. 2d 245; *State v. Lee,* 247 N.C. 230, 100 S.E. 2d 372. We adhere to that interpretation and hold, consonant with the legislative intent, that the offense condemned by G.S. 20-174.1, at the time these offenses were committed, was a general misdemeanor for which an offender could have been imprisoned for as much as two years in the discretion of the court. The sentences imposed are within the limits allowed by law at the time the offenses were committed and at the time the judgments were pronounced.

[13]   We note, however, that while this appeal was pending the Legislature amended G.S. 20-174.1(b) to read as follows: "Any person convicted of violating this section shall be punished by a fine not exceeding five hundred dollars ($500.00) or by imprisonment not exceeding six months, or both, in the discretion of the court." (S.L. 1969, c. 1012) Since this amendment reduced the maximum punishment for violation of G.S. 20-174.1(a) while this appeal was pending, the change inures to the benefit of defendant Henry Johnson, Jr., who was given an active sentence of nine months by the trial judge. "A judgment is not final as long as the case is pending on appeal." *State v. Pardon,* 272 N.C. 72, 75, 157 S.E. 2d 698, 701, and authorities there cited. The judgment as to defendant Henry Johnson, Jr., is therefore modified so as to reduce his sentence from nine months to six months in the common jail of Hyde County.

As thus modified the result reached by the Court of Appeals is affirmed.

Modified and affirmed.