STATE OF NORTH CAROLINA v. CURTIS HOUGH

No. 44

(Filed 1 February 1980)

1. **Constitutional Law § 60; Grand Jury § 3.3; Jury § 7.4— racial discrimination in selection of grand and petit juries—no prima facie showing**

    Defendant's evidence failed to present a *prima facie* case of racial discrimination in the selection of the grand and petit juries in violation of the equal protection clause of the Fourteenth Amendment where it tended to show that for the 1976-77 biennium, the jury commission prepared a list of 6000 names by hand by starting at the end of the alphabet and taking every fifth name from the voter registration list and every third name from the tax list and by selecting 74 names randomly from the telephone book; the commission purged 545 names from the list by deleting the names of those on the previous jury list and those they knew to be disqualified due to old age or physical disability; for the 1978-79 biennium, the jury list was compiled by computer by starting at the beginning of the alphabet and systematically taking names from the voter registration and tax lists; the jury commissioners did not know the percentage of blacks on the tax list, voter registration list, or jury list, but could possibly tell from an address whether the person lived in a predominantly white or black neighborhood; for the 1978-79 biennium 17.6 percent of the population of the county eligible for jury service was black and 11.2 to 12.5 percent of the jury pool was black, resulting in an absolute disparity of only 5.1 to 6.4 percent; and for the 1976-77 biennium the absolute disparity ranged from 3.2 to 4.7 percent, since an absolute disparity in the representation of blacks on the jury list of no more than 6.4 percent was insufficient to make out a *prima facie* case, and the disparity was not due to a subjective selection pro-

State v. Hough

cedure which is subject to abuse. Nor did such evidence make out a *prima facie* case of a violation of defendant's Sixth Amendment right (as applied to the states by the Fourteenth Amendment) to a jury representing a fair cross-section of the community.

2. **Criminal Law § 105.1— defendant's introduction of evidence—effect on motion for directed verdict**

Defendant, by introducing evidence in his behalf, waived his right to argue on appeal the denial of his motion for directed verdict made at the close of the State's evidence. G.S. 15-173.

3. **Burglary and Unlawful Breakings § 5.1; Rape § 5— first degree burglary—rape—defendant as perpetrator—sufficiency of evidence**

The State's evidence was sufficient for the jury to find that defendant was the perpetrator of a first degree burglary and rape where the victim positively identified defendant as the man who raped her in her home at night after the court conducted a *voir dire* and found that the victim had sufficient time and light to observe and identify the perpetrator of the crimes at the crime scene.

4. **Criminal Law §§ 112, 119— charge on presumption of innocence and reasonable doubt—failure to give exact charge requested**

The trial court did not err in failing to use the exact language of defendant's requested instructions on the presumption of innocence and on reasonable doubt where the court's charge, which followed the pattern criminal instructions on the presumption of innocence and on reasonable doubt, was a correct and adequate statement of the law and was in substantial conformity with the requested instructions.

5. **Criminal Law § 114.3— instructions—no expression of opinion**

The trial court did not express an opinion on the evidence by stating to the jury, "before you return a verdict of guilty of either charge," where the statements were at the end of sentences which, when read as a whole, were correct statements of the law.

6. **Criminal Law § 114.2— statement of contentions—no expression of opinion**

The trial judge did not express an opinion on the evidence by failing, during his statement of the State's contentions, to qualify his statements with remarks such as "the evidence tends to show" or "she testified that" where the judge began such portion of the charge with the statement that "the State has offered evidence which the State contends tends to show" and ended that portion of the charge with the statement that "the State contends from this evidence that you should be satisfied as to . . . ."

7. **Criminal Law § 114.2— instructions—reference to "rape"—no expression of opinion**

The trial court did not express an opinion on the evidence in stating that a doctor's examination was made "some hour or so after she testified that the Defendant had raped her" where the victim testified that she had been "raped" and the court was simply recapitulating her testimony.

**8. Criminal Law § 114.3— statement of contentions—no expression of opinion**

The trial judge did not express an opinion that defendant was the perpetrator of a first degree burglary and a rape when, during a statement of the State's contentions, he stated that "she says she did not consent to have defendant come in at all" and "of course, Mrs. Tucker has testified that he was there when she awoke and that defendant was on top of her."

**9. Criminal Law § 118.2— statement of contentions of both parties—restatement of State's contentions—no failure to give equal stress**

The trial court did not fail to give equal stress to the contentions of both parties ·where the court stated the contentions of both parties, defined the elements of the offenses, and then restated the contentions of the State, since the contentions of defendant were stated, defendant failed to object when the State's contentions were restated, and it was not error to consume more time in stating the State's contentions.

**10. Criminal Law § 118— charge on contentions—omission of elements of crime charged**

The court's charge, when considered as a whole, correctly defined the offenses of first degree burglary and second degree rape, although the court did omit certain elements of those offenses in stating the State's contentions.

**11. Criminal Law § 112.1— refusal to review evidence during jury deliberations—no abuse of discretion**

The trial judge did not abuse his discretion in refusing to review certain testimony when the jury returned to the courtroom with questions during its deliberations.

**12. Constitutional Law § 60; Jury § 7.4— gratuitous findings after trial concerning racial discrimination in jury selection—absence of prejudice**

Defendant was not prejudiced by the court's gratuitous finding after verdict and judgment that a black prospective juror was challenged for cause in this case because she had been restrained by the trial judge from issuing further bail bonds for failure to pay certain judgments or by the court's gratuitous conclusion after trial that, based on his observations over the last seventeen years, blacks are not systematically excluded from jury pools in the county, since defendant's motion to quash the indictment and the petit jury venire was properly denied at the conclusion of a *voir dire* held before the trial commenced, and no findings of fact were necessary in ruling on that motion because there were no conflicts in the evidence to be resolved.

Justice BROCK concurs in the result.

ON appeal by defendant from *McConnell, J.*, 4 December 1978 Session of UNION County Superior Court.

Defendant was tried upon indictments, proper in form, with first degree burglary and second degree rape. The State's evidence tended to show that Mrs. Mary Tucker, who lives at 400

East Houston Street in Monroe, was awakened shortly after 2:30 a.m. on 28 September 1977 by a man who was on top of her in bed. He apparently gained entry into the house by tearing a hole in the screen at the back door and then opening the door from the inside.

Defendant had a stick with him and he threatened to strike Mrs. Tucker. The two struggled and Mrs. Tucker received bruises on her right arm and on her right leg. Defendant had sexual intercourse with her by force and against her will.

There were no lights on in her bedroom at the time of the incident but there was light coming into the room from nearby streetlights. She described her assailant to the police as a black male who was a little taller than herself, with a small beard or goatee, plaited hair, a gold earring in his left ear, and she thought he was wearing bluejeans. When the police officer went outside to radio in this description, he saw the defendant, who matched the description, walking down the street about a hundred feet from the Tucker house. Defendant was taken into custody.

Mrs. Tucker made no pretrial identifications of the defendant. She identified him in court as the man who raped her. A brown bag was found on the night of this incident on Mrs. Tucker's back porch. Fingerprints identified as those of Barbara Vinson, a friend of the defendant, were found on the bag.

Defendant's evidence tended to show that he partied with friends that evening until around midnight and that he had been drinking at the party. When he left his friend's home, he went to a telephone booth and called Barbara Vinson. He testified that they "weren't getting along too good" and he wanted to see if he could "better [their] relationship." Vinson testified that she told him not to come over when he called and she was "sort of angry" when he got to her house. He had a brown bag with him when he arrived and she picked it up but does not remember looking inside. They talked for about two and one-half hours. She looked at her digital clock when he left and it was 2:32 a.m.

Defendant testified that he then walked to the Bickett School and slept there until 4:00 a.m. He then went home, dressed, and left for work. He was walking down Maurice Street toward his brother's house when the police came up and arrested him.

The jury found defendant guilty as charged in both indictments. He was sentenced to life imprisonment upon the conviction for first degree burglary and he has appealed this conviction to this Court. He was sentenced to sixty years in prison (minimum and maximum) upon the conviction for second degree rape. His motion to bypass the Court of Appeals on his appeal from this conviction was allowed by this Court on 9 May 1979.

*Karen Bethea Galloway and Susan E. Barco for the defendant.*

*Attorney General Rufus L. Edmisten by Associate Attorney General Francis W. Crawley for the State.*

COPELAND, Justice.

[1] By his second assignment of error, defendant contends that the trial judge erred in denying his motion to quash the indictment returned by the grand jury and to quash the petit jury venire on the grounds that the method of juror selection in Union County results in a significant under-representation of blacks[1] in violation of the Sixth and Fourteenth Amendments. These contentions are without merit. We shall discuss defendant's Fourteenth Amendment equal protection claim first.

A defendant is not entitled to demand a proportionate number of his race on the jury which tries him nor on the venire from which petit jurors are drawn. *State v. Brower,* 289 N.C. 644, 224 S.E. 2d 551 (1976); *State v. Cornell,* 281 N.C. 20, 187 S.E. 2d 768 (1972); *State v. Spencer,* 276 N.C. 535, 173 S.E. 2d 765 (1970). He is constitutionally entitled not to have members of his race systematically excluded from grand juries and from petit jury venires. *State v. Cornell, supra; State v. Spencer, supra.* When the defendant alleges such racial discrimination, the burden is upon him to establish it. *State v. Hardy,* 293 N.C. 105, 235 S.E. 2d 828 (1977).

In order to establish a violation of equal protection, a defendant must show that he is a member of a recognizable, distinct class or group which has been purposely discriminated against

---

1. Throughout this opinion we use the term "blacks" absolutely synonymously with the term "Negroes" and we are referring to no group or race any larger or smaller than that encompassed by the term "Negroes."

and singled out for different treatment under the laws as written or applied. *Washington v. Davis*, 426 U.S. 229, 48 L.Ed. 2d 597, 96 S.Ct. 2040 (1976); *Castaneda v. Partida*, 430 U.S. 482, 51 L.Ed. 2d 498, 97 S.Ct. 1272 (1977). The intentional discrimination may be proven by showing that the procedure employed for the selection of jurors has resulted in substantial under-representation of his race or identifiable group for a significant period of time. *State v. Hardy, supra; Castaneda v. Partida, supra.* In turn, this substantial under-representation must be proven by comparing the proportion of the group in the total population to the proportion called for service on the grand jury or placed on the petit jury venire. *State v. Hardy, supra; Castaneda v. Partida, supra.* This under-representation must be to such an extent as to show intentional discrimination. *Washington v. Davis, supra.*

Also, a showing that the selection procedure is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing. *See, Castaneda v. Partida, supra* (selection procedure subject to abuse because jury commissioners subjectively chose those whom they felt were moral, upright and would make good jurors); *Turner v. Fouche,* 396 U.S. 346, 24 L.Ed. 2d 567, 90 S.Ct. 532 (1970) (significant statistical disparity and subjective selection method both shown); *Whitus v. Georgia*, 385 U.S. 545, 17 L.Ed. 2d 599, 87 S.Ct. 643 (1967) (highly subjective selection method). Once the defendant has made out a *prima facie* case of discriminatory purpose, the burden then shifts to the State to rebut that case. *State v. Hardy, supra; Castaneda v. Partida, supra.*

Here, defendant produced the following relevant evidence at the hearing on the motion to quash the indictment and the petit jury venire. For the 1976-77 biennium, the jury commission for Union County prepared a list of 6,000 names. They started at the last of the alphabet and worked back taking every fifth name from the voter registration list for Union County. They did the same with the tax list taking every third name. Seventy-four names were taken randomly from the telephone book.

They purged approximately 545 names from the list. This was accomplished by comparing the compiled list with the jury list from the previous biennium and deleting the names of those who were on the previous list. The commissioners also testified

that, pursuant to additional instructions set forth in a manual published by the Institute of Government, *Manual for Jury Commissioners*, pp. 6-8 (1973), they deleted the names of those whom they knew were disqualified due to old age or physical disability.

The jury commissioners compiled this list by hand and secretaries in the office of the Clerk of Court typed up the approximately 6,000 names individually on index cards. These cards were then turned over to the Register of Deeds' office. For the 1978-79 biennium, the list was compiled by computer according to procedures determined by the jury commission for that biennium. The tax list and voter registration list were again used, but this time they began at the beginning of the alphabet in systematically taking names by computer for the jury list.

The jury commissioners who testified stated that they did not know the percentage of blacks on the tax list, the voter registration list, on their compiled jury list, or in Union County. Addresses accompanied the names on one of the lists they used to compile the jury list. Some commissioners testified that they might be able to tell from an address whether a person lived in a predominantly white or black neighborhood but there was no indication that they followed any procedure other than the prescribed systematic procedure. Another commissioner testified that they did not have time to look at the addresses since they had to compile the list by hand for the 1976-77 biennium and, as noted above, the list was compiled systematically by computer for the 1978-79 biennium.

James Michael O'Reilly testified for the defendant that he took samples from the compiled jury list and compared them with the total black population in Union County eligible for jury service. He determined that 82.4 percent of the population of Union County eligible for jury service in 1977 was white and 17.6 percent was black. He found that 11.2 percent to 12.5 percent of the jury pool for the 1978-79 biennium was black. The percentage of eligible blacks in the county minus the percentage of blacks in the jury pool equals the absolute disparity in the representation of blacks on the jury list. Here, there is an absolute disparity of 5.1 percent to 6.4 percent.

He also computed comparative disparity figures. Absolute disparity divided by the percentage of eligible blacks in the coun-

ty equals comparative disparity. He found that for the 1978-79 biennium blacks were from 28.6 percent to 36.5 percent less likely to be placed on the jury list than whites. For the 1976-77 biennium, he found an absolute disparity ranging from 3.2 percent to 4.7 percent and comparative disparities ranging from 18.4 percent to 27.6 percent.

We hold that this evidence fails to present a *prima facie* case of racial discrimination in violation of the equal protection clause of the Fourteenth Amendment. Defendant is black and blacks constitute a cognizable group. *State v. Lowry*, 263 N.C. 536, 139 S.E. 2d 870, *cert. denied sub nom.*, 382 U.S. 22 (1965); *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1879). However, defendant has failed to show a substantial under-representation of blacks as required by *Hardy* and *Castaneda*.

Defendant maintains that in measuring this under-representation we should use comparative rather than absolute disparity figures. His argument is that absolute disparity figures fail to take into account the total eligible black population in the county. Thus, blacks in counties with a low black population will suffer more harm if we allow the same level of absolute disparity in those counties that we allow in counties with a larger black population.

We consider absolute disparity figures and we do so on a case by case basis. *State v. Brower, supra.* This means that we consider the percentage of blacks in the jury pool in light of the percentage of eligible blacks in the county's population. In *Cornell*, it was stated that 20 percent of the population of Forsyth County was black while the jury pool was 10 percent black. This 10 percent disparity was held insufficient to make out a *prima facie* case of racial discrimination. We hold that, given a black population in Union County of 17.6 percent, an absolute disparity, which by defendant's calculation ranges no higher than 6.4 percent, is insufficient to make out a *prima facie* case.

Furthermore, the disparities are not due to a subjective selection procedure that is subject to abuse as was the case in *Castaneda, Turner* and *Whitus*. The selection procedure for Union County for the past two bienniums was conducted in compliance with the objective, systematic procedure set forth in G.S. 9-2 *et seq.* which was held to be constitutional in *State v. Cornell, supra.*

State v. Hough

The fact that some jury commissioners may have been able to identify the race of some of the potential jurors from their addresses was held insufficient in *Cornell* to show an opportunity for discrimination. We cannot say that purposeful discrimination has been proven by showing a disparity of 6.4 percent. *State v. Cornell, supra; Swain v. Alabama,* 380 U.S. 202, 13 L.Ed. 2d 759, 85 S.Ct. 824 (1965) (absolute disparity of 10 percent held insufficient to show purposeful racial discrimination).

Defendant also maintains that he has been denied his Sixth Amendment right (as applied to the States by the Fourteenth Amendment, *Duncan v. Louisiana,* 391 U.S. 145, 20 L.Ed. 2d 491, 88 S.Ct. 1444, *rehearing denied,* 392 U.S. 947 (1968)) to a jury representing a fair cross-section of his community.

The Sixth Amendment does require that jury pools represent a fair cross-section of the community and that no identifiable group be systematically excluded. *Taylor v. Louisiana,* 419 U.S. 522, 42 L.Ed. 2d 690, 95 S.Ct. 692 (1975). In order to establish a *prima facie* case of a violation of this requirement, a defendant does not have to show purposeful discrimination. Instead, he must show that he is a member of a distinctive group and that the representation of this group in venires from which juries are chosen is not fair and reasonable in relation to the population of that group in the community. He must then show that this under-representation is due to the systematic exclusion of that group in the jury selection process. *Duren v. Missouri,* 439 U.S. 357, 58 L.Ed. 2d 579, 99 S.Ct. 664 (1979). Defendant has failed to meet these latter two requirements.

In *Taylor,* a 43 percent disparity in the representation of women in the jury pool was shown. Thus, defendant was denied a jury drawn from a representative cross-section of the community. In *Duren,* the disparity of women in the jury pool was 39 percent. The highest disparity figure we have here is 6.4 percent. Defendant has not presented evidence showing a level of disparity anywhere near the figures presented in *Taylor* and *Duren.* Also, the objective, systematic procedures set forth in G.S. 9-2 *et seq.* were scrupulously followed in this case and therefore, we see no evidence of any systematic exclusion of blacks. We hold that defendant has failed to present a *prima facie* case of a violation of the Sixth Amendment. This assignment of error is overruled.

[2] By his third assignment of error, defendant argues that the trial judge erred in denying his motions for a directed verdict. Defendant, by introducing evidence in his behalf, waived his right to argue on appeal the denial of his motion for directed verdict made at the close of the State's evidence. G.S. 15-173. His motion for directed verdict made at the close of all the evidence is here for review and his contention that his motion should have been granted is meritless.

[3] We held in *State v. Conrad*, 293 N.C. 735, 239 S.E. 2d 260 (1977) that to withstand defendant's motion to dismiss there must be a sufficient basis for the jury to find that the crime charged (1) was committed (2) by the person charged. Defendant argues that there is insufficient evidence to show that he is the one who burglarized the Tucker residence and raped Mrs. Tucker. Mrs. Tucker positively identified him in court as the man in her home in her bed who raped her. A *voir dire* was conducted on this identification and the trial judge found that there was sufficient time and light to observe and identify the perpetrator of the crime at the time of its commission. He properly concluded that the in-court identification was not tainted in any manner. This assignment of error is overruled.

[4] By his fourth assignment of error, defendant argues that the trial judge erred in failing to use the exact language of defendant's requested instructions on the presumption of innocence and regarding the State's burden that it must prove the offenses charged beyond a reasonable doubt.

We held in *State v. Davis*, 291 N.C. 1, 229 S.E. 2d 285 (1976), that when a defendant makes a request for special instructions on the presumption of innocence and reasonable doubt that are correct in themselves and are supported by evidence, then the trial judge must charge the jury in substantial conformity with the requests. However, the trial judge does not have to "parrot the instructions" or "become a mere judicial phonograph for recording the exact and identical words of counsel." *Id.* at 14, 229 S.E. 2d at 294, *quoting State v. Bailey*, 254 N.C. 380, 386, 119 S.E. 2d 165, 170 (1961); *State v. Henderson*, 206 N.C. 830, 175 S.E. 201 (1934).

Here, the trial judge followed the pattern criminal jury instructions on the presumption of innocence and reasonable doubt. Since his charge was a correct and adequate statement of the law,

we hold that it was in substantial conformity with the requested instructions which were also substantially correct statements of the law. *State v. Davis, supra; State v. Wells*, 290 N.C. 485, 226 S.E. 2d 325 (1976); *State v. Flippin*, 280 N.C. 682, 186 S.E. 2d 917 (1972).

Defendant also asserts that he was denied due process of law in the judge's charge to the jury as defined by the United States Supreme Court in *Taylor v. Kentucky*, 436 U.S. 478, 56 L.Ed. 2d 468, 98 S.Ct. 1930 (1978). The rationale of *Taylor v. Kentucky* is inapposite to the case *sub judice*. There, it was held to be a denial of due process on the facts of that case for the trial judge to refuse to instruct on the presumption of innocence. Here, there was a correct and adequate instruction on the presumption of innocence. This assignment of error is overruled.

By his fifth, sixth and eighth assignments of error, defendant asserts that the trial judge expressed opinions during his charge to the jury that certain facts had been proved and that the defendant was guilty as charged.

It is elementary that the trial judge may not express any opinions on the evidence or of defendant's guilt during his instructions to the jury. G.S. 15A-1232; *State v. Barber*, 268 N.C. 509, 151 S.E. 2d 51 (1966); *State v. Belk*, 268 N.C. 320, 150 S.E. 2d 481 (1966); *State v. Newton*, 249 N.C. 145, 105 S.E. 2d 437 (1958).

[5] He groups his alleged statements of opinions into four categories. First, defendant cites three instances where the trial judge stated to the jury, "before you return a verdict of guilty of either charge." Defendant has simply taken the ending to these three sentences which when read as a whole are correct statements of the law. One example will suffice. The trial judge instructed the jury that,

> "They are two separate cases, and you must vote on them separately when you come to consider them and before you return a verdict of guilty as to either charge. It must be the verdict of all twelve Jurors; and you must be satisfied, the burden being on the State to satisfy you from the evidence and beyond a reasonable doubt of his guilt before you return a verdict of guilty of either of the charges."

We find no expression of opinion here or in the other statements of which defendant complains.

[6] Second, defendant complains that during the statement of the State's contentions, the trial judge failed to qualify his statements with remarks such as, "the evidence tends to show" or "she testified that." The trial judge began the complained of portion of the charge with the statement that, "[t]he State has offered evidence which the State contends tends to show that" and ended with the statement that, "the State contends from this evidence that you should be satisfied as to. . . ." The use of these statements does not constitute an expression of an opinion. *State v. Huggins*, 269 N.C. 752, 153 S.E. 2d 475 (1967); *State v. Roberts*, 293 N.C. 1, 235 S.E. 2d 203 (1977). Also, it is not necessary for the trial judge to repeat such phrases throughout the charge in restating the evidence and in stating the contentions of the parties. *State v. Humbles*, 241 N.C. 47, 84 S.E. 2d 264 (1954).

[7] Third, defendant asserts that the trial judge expressed an opinion in saying to the jury that the doctor's examination was made "some hour or so after she testified that the Defendant had raped her." She did so testify. Use of the word "rape" by a witness is not an expression of an opinion. *State v. Pearce*, 296 N.C. 281, 250 S.E. 2d 640 (1979). We hold that it was not prejudicial error for the trial judge to use this word when recapitulating some of her testimony. *See, State v. Gaines*, 283 N.C. 33, 194 S.E. 2d 839 (1973).

In *State v. McEachern*, 283 N.C. 57, 194 S.E. 2d 787 (1973), we held that the trial judge expressed an opinion in asking the prosecutrix whether she was "in the car when [she was] raped," because prosecutrix had not testified that she had been raped though there was evidence from which it could have been so inferred. *McEachern* is distinguishable from the case at bar because Mrs. Tucker testified that she had been raped and the trial judge was simply recounting that testimony. The jury was further instructed to base its verdicts solely upon the evidence that was presented from the witness stand. We find no prejudicial error.

[8] Fourth, defendant maintains that at several points in his charge, the trial judge expressed the opinion that the defendant was the perpetrator of the crime. The trial judge expressed no opinions at these points in the charge. He was merely stating the

State's contentions. For example, the trial judge stated that, "[s]*he says* she did not consent to have the defendant come in at all" and "[o]*f course, Mrs. Tucker has testified* that he was there when she awoke and that the defendant was on top of her." (Emphasis added.) We find no error here. These assignments of error are devoid of merit and are overruled.

[9] By his eighth assignment of error, defendant also contends that the trial judge erred in failing to give equal stress to the contentions of both parties. A trial judge does not have to state the contentions of the parties. However, when he undertakes to do so he must give equal stress to the contentions of both sides. *State v. Hewett*, 295 N.C. 640, 247 S.E. 2d 886 (1978). This requirement was explicitly stated in former G.S. 1-180. It is now implicit in G.S. 15A-1232. *Id.*

Generally, any objections to the statement of contentions must be made before the jury retires to give the trial judge an opportunity to correct the statements he made; otherwise, they are deemed to have been waived and will not be considered on appeal. *State v. Virgil*, 276 N.C. 217, 172 S.E. 2d 28 (1970); *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968); *State v. Butler*, 269 N.C. 733, 153 S.E. 2d 477 (1967). The rule is otherwise, however, where the trial judge states fully the contentions of the State but fails to give *any* of the defendant's contentions. No objection is required in that event. *State v. Hewett, supra.* The fact that the trial judge necessarily consumes more time in stating the contentions of the State does not violate the requirement of equal stress. *State v. Sanders*, 298 N.C. 512, 259 S.E. 2d 258 (1979).

Here, the trial judge stated the contentions of both parties. He then defined the elements of each crime for which the defendant had been charged. He restated the contentions of the State after defining the elements of the offenses and then properly related the law to the evidence. While we do not necessarily condone the practice of restating the State's contentions when defining the offenses charged, we find no prejudicial error on the record before us. Defendant's contentions were stated. He failed to object when the State's contentions were restated, and it is not error to consume more time in stating the State's contentions. This assignment of error is overruled.

[10] By his seventh and ninth assignments of error, defendant contends that the trial judge failed to fully define the offenses of second degree rape and first degree burglary. In stating some of the State's contentions, the trial judge omitted the requirement that the crime must have been committed against Mrs. Tucker's consent in order to constitute rape. In stating the contentions of the State regarding the burglary charge, there were no references to the requirement that there be a breaking and that there be an intent to commit a felony.

These assignments are without merit. At the points in the charge that the trial judge was *defining* the offense of rape and *defining* the offense of burglary, he performed those tasks correctly. The charge, read as a whole, *State v. McWilliams*, 277 N.C. 680, 178 S.E. 2d 476 (1971), correctly defined the offenses charged. These assignments of error are overruled.

[11] By his tenth assignment of error, defendant maintains that the trial judge erred in refusing to exercise his discretion concerning whether to review certain testimony when the jury returned to the courtroom during its deliberations with questions. We held in *State v. Ford*, 297 N.C. 28, 252 S.E. 2d 717 (1979), that error was committed when the trial judge stated that he was not allowed to go back and have the testimony read to the jury. Such a matter is within the trial judge's sound discretion. *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978); *State v. Furr*, 292 N.C. 711, 235 S.E. 2d 193, *cert. denied*, 434 U.S. 924 (1977); *State v. Covington* 290 N.C. 313, 226 S.E. 2d 629 (1976).

Here, the trial judge exercised his discretion and decided against reviewing the testimony. He did not abuse his discretion or state an opinion in so doing. This assignment of error is overruled.

[12] By his eleventh assignment of error, defendant contends that, after the verdict and judgment had been rendered, the trial judge erred in making a certain finding of fact and entering a certain conclusion of law. Defendant contends that there was no evidence to support the finding made after trial that a black prospective juror was challenged for cause in this case due to her having been restrained from issuing any further bonds because of her failure to pay certain judgment absolutes. There was nothing in the record to disclose that any objection was made by the

State v. Hough

defendant to this challenge for cause while the jury was being selected. The trial judge also gratuitously concluded after trial that, based on his observations over the last seventeen years, blacks are not systematically excluded from jury pools in Union County.

This alleged "finding" and "conclusion" by the trial judge are no more than remarks inserted in the record which are absolutely meaningless as far as his ruling *before* trial on defendant's motion to quash based on his allegations under the Sixth and Fourteenth Amendments concerning the jury lists in Union County for the 1976-77 and 1978-79 bienniums. Defendant's motion to quash the indictment and the petit jury venire was properly denied at the conclusion of the *voir dire* held before the trial commenced. No findings of fact were necessary in ruling on that motion before trial because there were no conflicts in the evidence to resolve. *See, State v. Siler*, 292 N.C. 543, 234 S.E. 2d 733 (1977). This assignment of error is overruled.

Defendant failed to bring assignments of error one and twelve forward and argue them in his brief; therefore, they are deemed abandoned. Rule 28(a), (b)(3), Rules of Appellate Procedure; *State v. Herbin*, 298 N.C. 441, 259 S.E. 2d 263 (1979); *State v. Anderson*, 281 N.C. 261, 188 S.E. 2d 336 (1972).

Defendant was "entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 619, 97 L.Ed. 593, 605, 73 S.Ct. 481, 490 (1953); *accord, State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535 (1976), *cert. denied*, 429 U.S. 1093 (1977). A fair trial the defendant has had and we find

No error.

Justice BROCK concurs in the result.