STATE OF NORTH CAROLINA v. GLENN FOY LINK

No. 7219SC129

(Filed 23 February 1972)

**1. Hunting § 3— unlawful taking of deer — warrant**

Warrant charging that defendant "did unlawfully and wilfully, and take game animals, to-wit: deer, between the hours of sunset and sunrise, by aid of artificial light, shined more than 50 feet from a public road way" *held* sufficient to charge an offense punishable under the provisions of G.S. 113-109(b).

**2. Indictment and Warrant § 9— evidentiary matter — inappropriate statute — surplusage**

Where a warrant sufficiently charges the commission of a statutory offense, reference to descriptive matter or evidentiary detail or to an inappropriate section of the statute will be treated as surplusage and will not vitiate the warrant.

**3. Hunting § 3— unlawful taking of deer — sufficiency of evidence**

The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of the offense of taking a deer between sunset and sunrise on a public highway by the use of artificial light.

**4. Hunting § 3; Criminal Law § 114— expression of opinion**

In a prosecution for taking a deer between the hours of sunset and sunrise on a public highway by the use of artificial light, the trial court did not express an opinion that the State had proved the time of commission of the offense by its instruction that as a matter of law "a few minutes after seven o'clock on December 9 is after sunset," the instruction amounting to no more than judicial notice of a physical fact of general knowledge.

**5. Criminal Law § 138; Hunting § 3— unlawful taking of deer — mitigation of punishment prior to conviction**

Where the General Assembly reduced the maximum punishment for the offense of taking deer between sunset and sunrise on a public roadway by the use of artificial light prior to defendant's conviction of that offense upon trial *de novo* in the superior court, and

the sentence imposed is greater than that allowed by the new law, defendant is entitled to have his sentence reduced to conform with the new law.

APPEAL by defendant from *Collier, Judge,* 7 September 1971 Session of Superior Court held in ROWAN County.

This criminal prosecution was on a warrant issued 15 December 1969, tried *de novo* in the superior court after the defendant appealed from conviction and judgment in the Rowan County Recorder's Court. The complaint portion of the warrant reads as follows:

"C. V. Clark, GP, being duly sworn, complains and says, that at and in said County, and Morgan Township on or about the 9 day of December, 1969, Glen Foy Link did unlawfully, and wilfully, and take game animals, to-wit: deer, between the hours of sunset and sunrise, by aid of artificial light, shinned (sic) more than 50 feet from a public road way, in an area frequented by wild deer. In violation of GS-113-104., Punishable by GS-113-109(B), against the form of the Statute in such cases made and provided, and contrary to law and against the peace and dignity of the State."

The evidence for the State consisted of the testimony of three witnesses: Robert Lee Goodman, Tom Trexler, and Clay Clark. Goodman testified that he lived on Ribelin Road in the eastern part of Rowan County, in an area where there are wild deer. On 9 December 1969, shortly after sunset but before complete darkness, he observed an off-white 1962 Ford automobile with two people in it being driven slowly past his trailer home. (Goodman at this time was standing in his front yard, talking to the State's witness Trexler.) Approximately twenty minutes later, the same vehicle passed again, this time with its headlights on, and stopped on a curve with its headlights shining out into a field. Goodman further testified that he saw a man emerge from the right side of the stopped 1962 Ford and walk around behind the car, and that he then heard a shot—"a high-powered rifle crack." A man then passed in front of the automobile, with its lights shining on him, and got into the right side. When the automobile left, Goodman and Trexler followed in Trexler's automobile and got close enough behind the Ford to read the license number and to recognize the driver as one

Coolidge Glover. Goodman testified, "I got a good look at the back of the head of the other man in the car. I had seen him before. That man sitting there, the defendant, is the man I saw in that car. I've seen him and I saw him that night. * * * There is not (sic) doubt in my mind that this is the man I saw that night the deer was shot."

On redirect examination, Goodman testified that less than an hour after he had heard the shot, a freshly-killed deer was found in the field into which the lights of the 1962 Ford had been shining, approximately 65 yards from the place where the automobile had been parked.

The witness Trexler testified that on the night in question, he had been at the home of Goodman; that he "had a report on an automobile and . . . went to check on it." He further testified:

"I seen (sic) the car I was looking for twice. It was a 1962 Ford, either cream or a light white. The defendant was in that car. I saw it while I was at Mr. Goodman's house and before. I saw it the first time down at the Creek Road. It was going west, heading to Ribelin Road at the time. It was going slow—he never drives fast. I had an opportunity to observe the passengers in that car. The defendant was one of them. I am familiar with this person. After I saw him on Panther Road, I saw him again traveling north on Ribelin Road, where I was at Mr. Goodman's house. The vehicle was going 25 or 30 miles per hour when it came by where I was. I recognized the vehicle. There were two men in the car. The first time he came by, he came by driving slow and went on and made the circle and came back. He came around the curve and came down and the other curve, like this right here—pulled over to the right of the road and the man gets out on the right side, walks around the car, and lays the gun on the hood, and we hear a shot—or an object that looked like a gun. We heard a shot. I later went back to the scene with the game protector. A dead deer was found."

Clark, an employee of the North Carolina (Wildlife) Resources Commission, testified to the effect that he had later been called to the scene by Goodman and Trexler, and, by shining a light out into the field from the point on the roadside

where the 1962 Ford allegedly had been stopped, had located the slain deer. He also testified that the deer had been freshly killed by being shot with a rifle.

At the close of the State's evidence, the defendant moved for judgment as of nonsuit, which was denied. The defendant rested and renewed his motion for judgment as of nonsuit, which was also denied. The jury returned a verdict of guilty as charged and the defendant was sentenced to imprisonment for six months. Defendant's motions to set aside the verdict, for judgment notwithstanding the verdict and for a new trial were denied, to which the defendant excepted and gave notice of appeal to the Court of Appeals.

*Attorney General Morgan and Assistant Attorney General Rich for the State.*

*Robert M. Davis for defendant appellant.*

MALLARD, Chief Judge.

The pertinent portions of the North Carolina General Statutes under which the defendant was charged read, at the time he committed the offense, as follows:

"§ 113-104. *Manner of taking game.*—* * * Game birds and game animals shall be taken only in the daytime, between sunrise and sunset . . . . No person shall take any game animals . . . by aid of or with the use of any jacklight, or other artificial light. . . .

(G.S. 113-83 provides that, for the purpose of this article, a deer is a "game animal.")

§ 113-109. *Punishment for violation of article.*—* * *

(b) Any person who *takes or attempts* to take deer between sunset and sunrise with the aid of a spotlight or other artificial light *on any highway* or in any field, woodland, or forest, in violation of this article shall, upon conviction, be fined not less than two hundred fifty dollars ($250.00) or imprisoned for *not less than ninety days.* * * * " (Emphasis added.)

[1] The defendant's first contention is that the trial judge committed error in denying his motions for judgment as of non-

suit, on the ground that the warrant upon which he was tried was not sufficient to charge an offense punishable under the provisions of G.S. 113-109(b). We do not agree. The warrant contains an allegation that the acts complained of took place by shining an artificial light from a public roadway. The shooting and killing of a deer with a rifle is a "taking" within the intent and meaning of the statute. The case of *State v. Lassiter*, 9 N.C. App. 255, 175 S.E. 2d 689 (1970), cited by appellant, is distinguishable.

[2] Where the warrant, as in this case, sufficiently charges the commission of a statutory offense, reference to descriptive matter or evidentiary detail are treated as surplusage, or reference to an inappropriate section of the statute will not vitiate the warrant. 4 Strong, Indictment and Warrant, § 9, pp. 352 and 353; *State v. Abernathy*, 265 N.C. 724, 145 S.E. 2d 2 (1965); *State v. Anderson*, 259 N.C. 499, 130 S.E. 2d 857 (1963).

[3] We hold that the warrant in the case before us sufficiently charged a violation of Article 7 of Chapter 113 of the General Statutes, punishable as set out in G.S. 113-109(b), and that the defendant was properly tried for taking a deer between sunset and sunrise, on a public roadway, by the use of artificial light. *State v. Anderson, supra; State v. Hammonds*, 241 N.C. 226, 85 S.E. 2d 133 (1954). The State's evidence was ample to withstand the motion for judgment as of nonsuit; therefore, it was not error for the trial judge to allow the case to proceed to judgment. In view of the foregoing holding, the defendant's contention that the trial court erred in referring to portions of G.S. 113-109(b) in its charge to the jury is without merit and requires no discussion.

[4] The defendant also assigns as error the following portion of the charge to the jury:

> "I instruct you as a matter of law that a few minutes after seven o'clock on December 9 is after sunset . . . . "

The defendant contends that this statement was a violation of G.S. 1-180, which prohibits the judge from giving an opinion as to whether a fact has been sufficiently proven. This contention is without merit. The State had presented evidence that the offense had been committed shortly after 7:00 p.m. on 9 December 1969. We do not perceive that Judge Collier expressed any

opinion whatsoever that the State had proved the time of the commission of the offense in the statement complained of. His instruction amounted to no more than judicial notice of a physical fact of general knowledge, and was proper. Counsel for the defendant has failed to distinguish between the *allegation* that the shooting of the deer occurred shortly after 7:00 p.m. on the date in question (which it was incumbent upon the State to prove) and the *fact* that shortly after 7:00 p.m. on the date in question was after sunset (which was a proper subject for judicial notice).

In *Weavil v. Myers,* 243 N.C. 386, 90 S.E. 2d 733 (1956), it was said, "We take judicial notice of the fact that about 7:00 p.m. on 26 November 1954, in North Carolina, was within the time between one-half hour after sunset and one-half hour before sunrise." See also, *Oxendine v. Lowry,* 260 N.C. 709, 133 S.E. 2d 687 (1963).

The defendant contends that the trial judge committed error in other portions of the charge. When the charge is read and considered as a whole, no prejudicial error is made to appear.

[5] The offense charged, however, was alleged to have been committed on 9 December 1969. The punishment authorized at that time by G.S. 113-109(b) was a fine of *not less than* $250.00 or imprisonment for *not less than* ninety days. Upon his conviction in superior court at the 7 September 1971 Session, the defendant was sentenced to a term of imprisonment for six months. Before his conviction and sentence in the superior court, the Legislature had reduced, effective 8 June 1971, the punishment for the offense of which the defendant was convicted. See G.S. 113-109(b) as amended in 1971. This reduction inured to the benefit of the defendant. *State v. Pardon,* 272 N.C. 72, 157 S.E. 2d 698 (1967); *State v. Spencer,* 276 N.C. 535, 173 S.E. 2d 765 (1970); and *State v. Jack Arnold McIntyre,* 13 N.C. App. 479 (1972). The sentence imposed in the case before us was greater than that allowed by law at the time of its imposition; therefore, the judgment imposing the sentence of six months is vacated, and the cause is remanded for proper judgment under the provisions of G.S. 113-109(b), as amended by the 1971 General Assembly. *State v. Darnell,* 266 N.C. 640, 146 S.E. 2d 800 (1966); *State v. Seymour,* 265 N.C. 216, 143 S.E. 2d 69 (1965); *State v. Alston,* 264 N.C. 398, 141 S.E. 2d 793

(1965); *State v. Templeton,* 237 N.C. 440, 75 S.E. 2d 243 (1953).

Remanded for the entry of a proper judgment.

Judges MORRIS and PARKER concur.