14751

BROWN v. SIKES *ET AL.*

(198 S. E., 854)

*Mr. R. T. Jaynes,* for petitioner,

*Messrs. Hughs & Hughs* and *Harold Major,* for respondents,

September 27, 1938.

*Per curiam.*

This proceeding was by special permission commenced in the original jurisdiction of the Supreme Court, and submitted upon an agreed case containing the facts upon which the controversy depends. The purpose of the proceeding is to enjoin the respondents, acting as the designated agents of the Board of Trustees of Clemson College, from pursuing an application for a loan of One Hundred and Thirty Thousand ($130,000.00) Dollars from the Public Works Administration of the Federal Government, and the issuing of bonds for the repayment of the loan under the provisions of Sections 15 to 21, inclusive, of Act 597 of the General Assembly of South Carolina for the year 1935, approved the third day of June, 1935, 39 St. at Large, p. 1200.

Section 15 of the Act authorizes the Board of Trustees of Clemson Agricultural College of South Carolina to construct a suitable barracks building and to operate the same for the enlargement of facilities and services of the institution. The Board of Trustees is authorized to exercise full discretion in planning the same to make the investment self liquidating, and a permanent source of benefit to the institution.

Under authority of this section, Clemson College has erected four barracks buildings, containing two hundred and ten (210) rooms in the aggregate. They now seek to erect another.

The petitioner seeks an injunction, alleging by his first question that the language of Section 15, "to construct a suitable barracks building, etc.," limits the authority of the college to the erection of but a single structure as a barracks.

Section 16 authorizes the trustees to enter into contract with some federal agency "to obtain a loan for the construction and equipment of such barracks, not exceeding the sum of Three Hundred Fifty Thousand ($350,000.00) Dollars, for the uses aforesaid * * *." The college authorities heretofore obtained a two hundred and twenty thousand dollar loan from the Public Works Administration, with which to construct the four buildings referred to above. The respondents, on proper authority from the trustees by resolution, now seek a further loan of one hundred and thirty thousand dollars from the same source for the erection of an additional barracks. The two loans would aggregate the maximum of three hundred and fifty thousand dollars authorized by the Act.

The petitioner seeks to enjoin the contracting of this loan, alleging in his second question that the language, "to obtain a loan * * *," limits the authority of the college to a single loan, and does not authorize a series of loans.

The answer to these questions depends upon a correct interpretation of the language used in Sections 15 and 16 of the Act.

In interpreting a statute, the first consideration is to determine the intent of the enacting body.

"All rules of statutory construction yield to principle that Court must ascertain the real intention of Legislature." *State v. Brown*, 154 S. C., 55, 151 S. E., 218.

> The Court will ascertain the intent of the Legislature, and "give it effect so far as possible within constitutional limitations." *Gregg Dyeing Co. v. Query*, 166 S. C., 117, 164 S. E., 588, 590.

> A persuasive aid to determining legislative intent, is to discover the legislative purpose.

A "statute must be construed in light * * * of intended purpose." *Winn v. Harby*, 166 S. C., 99, 164 S. E., 434.

The "Court must ascertain Legislature's meaning from words used in statute and from subject-matter." *Lytle v. Southern Ry.*, 171 S. C., 221, 171 S. E., 42, 90 A. L. R., 915.

The subject-matter of the Act is expressed in the title, and the purpose of the Act was to promote the development of certain educational and charitable institutions of the State, including Clemson College, by enabling them "to Acquire Buildings, Equipment Therefor, and Grounds, and to Issue Therefor Revenue Bonds to a Federal Agency, With No Liability Except to Apply the Net Income from Such Buildings in Payment of the Indebtedness to Be Incurred, and to Provide for Financing the Same."

The legislative purpose, insofar as the Clemson Agricultural College is concerned, is expressed on lines 5 and 6 of Section 15 to be, "for the enlargement of the facilities and services of the institution."

From the agreed statement of fact it appears that for lack of rooms the students of the college were greatly crowded, and that the enrollment has so increased that the new dormitories heretofore erected fail to relieve the congestion. Students are placed, in many instances, four in a room, which normally was designed for two. The legislative purpose in enlarging the facilities and services of the institution must have been to so enlarge them within certain financial limits as to relieve this congestion, otherwise no useful purpose would be served. With this legislative purpose in mind, we proceed to a consideration of the words used in Sections 15 and 16, upon which the two questions raised by petitioner rest.

The first proposition is that "a Barracks Building" limits the authority to build to the erection of a single structure. A sufficient answer to this proposition would seem to be the concluding sentence of Section 15. This sentence reads, "the Board of Trustees is authorized to exercise full discretion in planning the same (Barracks)

* * * ." This language is broad enough to leave to the discretion of the trustees the type, size, location, material, and time of erection as well as the number of buildings.

We consider, however, the words, "a Barracks Building." The indefinite article "a" is discussed in *State of Arkansas ex rel. v. Martin,* 60 Ark., 343, 30 S. W., 421, 28 L. R. A., 153. The Court in construing the expression, "a Judge", as used in the Constitution of that state, says (page 423): "According to Mr. Webster, 'a' means 'one' or 'any'. * * * It may mean one where only one is intended, or it may be any one of a great number. That is the trouble. Of itself, it is in no sense a term or limitation." And see C. J. S., Vol. 1, p. 1.

The word "Barrack" is singular in number, the plural being "Barracks". and is defined by Mr. Webster as follows: "Usually plural. Military origin. Huts made from branches of trees; later temporary structure for occupancy as during a siege; now a building or set of buildings for lodging soldiers, especially when in garrison; a plain large building; a row of houses joined together, erected for workmen."

The word "building" is defined by Webster as, "That which is built; *a fabric framed and designed to stand more or less permanently.*"

What was the legislative intent by the use of the words "a Barracks Building"? The article "a" has no significance of itself. *State of Arkansas v. Martin, supra.*

The word "Barracks" is plural in form and means a building or set of buildings, a row of houses joined together. The word "building" means a fabric framed or designed to stand more or less permanently. The word "Barracks" denotes the character of the building as a place of lodging as distinguished from library, classrooms, gymnasium, etc. The noun "building" following the word "barracks," denotes the type; that is, it should be framed and designed, with a view to permanence. It is contrary to reason to suppose the Legislature used the plural word "barracks," and

then by use of the singular word "building" immediately following, intended to restrict the plural "barracks," to the singular. This view is emphasized by the discretion given the trustees in the last sentence of Section 15—"The Board of Trustees is authorized to exercise full discretion in planning the same, * * * ." That the word "barracks" in Section 15 was intended in its plural sense is the more evident when we consider that it is used in Sections 16, 17, 18, and 21, without being followed by the qualifying noun "building." In Section 16 we find authorization for obtaining a loan for construction "of such barracks." In Section 17 the trustees are given power to agree as to control "of the barracks." In Section 18 provision is made for the payment of the loan from receipts arising "from the barracks." In Section 21 provision is made for a receiver to operate "the barracks."

Had the Legislature intended for the word "Building," following the word "Barracks," in Section 15 to so modify it as to make its meaning singular, the same modification would have been continued through the sections which follow.

The first question raised is without merit. We are constrained to hold that no limitation appears in the Act in question upon the number of barracks buildings which may be constructed under authority of the Act, except as the number is limited by the amount of money provided for, which will now be considered in the second question.

Does the language, "to obtain a loan * * * not exceeding the sum of Three Hundred Fifty Thousand ($350,000.00) Dollars," appearing in Section 16 of the Act, limit the trustees of Clemson College to the contracting of but a single loan of Three Hundred Fifty Thousand ($350,000.00) Dollars or less?

Bearing in mind the legislative purpose to enlarge the facilities of Clemson College so as to relieve the congestion of students in the dormitories, we proceed to consider this language. In answer to the first question, we

have held that there is no limit to the number of buildings to be erected. Careful examination of the Act discloses that there is no time limit fixed; there is no procedural method prescribed, and there is no prohibition against two or more loans.

On the contrary, since the Board of Trustees have "full discretion in planning the same," which, as we above hold, leaves to their discretion the time of construction as well as the number of buildings to be erected, it logically follows that the power to borrow and the borrowing should follow the necessity to borrow, when and as an additional barracks is to be erected. The only limitation affirmatively appearing in the Act is that the aggregate to be borrowed shall not exceed three hundred and fifty thousand dollars.

There being no limitation in the Act as to time or the method of borrowing—the maximum amount alone being fixed—and the object being to enlarge the facilities and services of the institution, and the trustees being given "full discretion in planning the same," we are constrained to hold that there is no merit in the second question, and the Board of Trustees of Clemson College is by the Act authorized to negotiate an additional loan for the purpose stated, so long as the aggregate amount of the loan does not exceed the authorized maximum.

The third question, as to whether the authorities have power to pledge the rentals of the barracks for the repayment of the loan, becomes purely academic in view of the holding as to the first two questions. The Board of Trustees having authority, as we have held above, to erect additional barracks and negotiate a further loan for that purpose, the Act itself, in Section 16, provides for the pledging of "the net income from the rents and uses of the property for the payment of the revenue bonds and interest as agreed upon." This is ample authority for pledging the rentals of the barracks for the repayment of the loan.

For the reasons stated, the petition should be dismissed, and the injunction refused.

It is so ordered.

Mr. Chief Justice Stabler and Messrs. Justices Bonham, Baker and Fishburne concur.

Mr. Justice Carter did not participate on account of illness.