177 S.E.2d 273 (1970)
277 N.C. 119
Daniel A. VOGEL, Jr., and C. Whid Powell, Jr., Partners, t/d/b Da Pow Developers Company, a Partnership, Plaintiffs,
v.
REED SUPPLY COMPANY, a Corporation, Defendant, and
June B. Vogel and Marilyn M. Powell, Partners, In Da Pow Developers Company, a Partnership, Da Pow Developers, Inc., Provident Mutual Life Insurance Company of Philadelphia, and Northwestern Bank, Additional Defendants (Case No. 1).
REED SUPPLY COMPANY, a Corporation, Plaintiff,
v.
DA POW DEVELOPERS, INC., Daniel A. Vogel, Jr., June B. Vogel, C. Whid Powell and Marilyn M. Powell, t/d/b Da Pow Developers Company, a Partnership, Provident Mutual Life Insurance Company of Philadelphia and Northwestern Bank, Defendants (Case No. 2).
No. 8.
Supreme Court of North Carolina.
October 14, 1970.
*277 Morgan, Byerly, Post & Keziah by William L. Johnson, Jr., High Point, for Reed Supply Co., appellant.
Fairley, Hamrick, Monteith & Cobb by James D. Monteith, Charlotte, and Newsom, Graham, Strayhorn & Hedrick by Josiah S. Murray III, Durham, for Daniel A. Vogel, Jr., and C. Whid Powell, Jr., t/a Da Pow Developers Co., a partnership, appellee.
Nye & Mitchell by R. Roy Mitchell, Durham, for Da Pow Developers, Inc., appellee.
HUSKINS, Justice.

FIRST CASE (69-CVS-41)
Unless the landowner (Da Pow Developers Company) is a third-party beneficiary of the subcontract between the general contractor (Da Pow Developers, Inc.) and the subcontractor (Reed Supply Company), an action by the landowner against the subcontractor for breach of the subcontract cannot be maintained, and Reed's motion for summary judgment in the first case (69-CVS-41) must be allowed. Rule 56, Rules of Civil Procedure. "If the contract was not made for the benefit of the third party, he has no cause of action upon the contract to enforce it, or sue for its breach. Traders' Land Co. v. Abbott Realty Co., 207 N.C. 453, 177 S.E. 335." American Trust Co. v. Catawba Sales & Processing Co., 242 N.C. 370, 379, 88 S.E.2d 233, 239 (1955).
*278 The practice of allowing third-party beneficiaries not in privity of contract to bring an action in their own name to enforce the contract made for their benefit was recognized in North Carolina as early as 1842. Cox v. Skeen, 24 N.C. 220 (2 Ired.L.), 38 Am.Dec. 691. The leading case, however, is Lawrence v. Fox, 20 N.Y. 268 (1859), where it is stated that "the law operating on the act of the parties creates a duty, establishes a privity, and implies the promise and obligation on which the action is founded."
The fiction of an implied privity has been abandoned in more recent times, but there has been no substantial agreement on the precise theoretical basis with which privity is replaced. See Note, Third Party Beneficiaries and the Intention Standard: A Search For Rational Contract Decision-Making, 54 Va.L.Rev. 1166 (1968); Note, The Third Party Beneficiary Concept: A Proposal, 57 Colum.L.Rev. 406 (1957). Nevertheless, there is general agreement that a third party may enforce a contract to which he was not privy but which was made for his benefit. See Annotation, Right of Third Person to Enforce Contract Between Others For His Benefit, 81 A.L.R. 1271.
The American Law Institute's Restatement of Contracts provides a convenient framework for analysis. Third party beneficiaries are divided into three groups: donee beneficiaries, where it appears that the "purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary"; creditor beneficiaries, where "no purpose to make a gift appears" and "performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary"; and incidental beneficiaries, where the facts do not appear to support inclusion in either of the above categories. Restatement of Contracts § 133 (1932). While duties owed to donee beneficiaries and creditor beneficiaries are enforceable by them, Restatement of Contracts §§ 135, 136, a promise of incidental benefit does not have the same effect. "An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee." Restatement of Contracts § 147.
The commentators have adopted the analytical framework of the Restatement, and many courts have followed suit. 4 Corbin on Contracts § 774; Simpson on Contracts § 116; 2 Williston on Contracts (Jaeger, 3rd Edition) § 356; Fidelity and Casualty Co. of New York v. Plumbing Department Store, 117 Fla. 119, 157 So. 506 (1934); La Mourea v. Rhude, 209 Minn. 53, 295 N.W. 304 (1941); Borough of Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73, 11 A.2d 83 (1940); Kelly v. Richards, 95 Utah 560, 83 P.2d 731, 129 A.L.R. 164 (1938); Mackubin v. Curtiss-Wright Corp., 190 Md. 52, 57 A.2d 318 (1948); Pettus v. Olga Coal Co., 137 W. Va. 492, 72 S.E.2d 881 (1952); Ridder v. Blethen, 24 Wash.2d 552, 166 P.2d 834 (1946).
While North Carolina has never explicitly adopted the analytical framework of the Restatement, the principles applicable to incidental beneficiaries were noted in Chipley v. Morrell, 228 N.C. 240, 45 S.E. 2d 129 (1947), and American Trust Co. v. Catawba Sales & Processing Co., supra (242 N.C. 370, 88 S.E.2d 233). Even so, the law in this State as to direct third party beneficiaries is synonymous with the Restatement categories of donee and creditor beneficiaries. American Trust Co. v. Catawba Sales & Processing Co., supra. Restatement § 133 correctly states the law of this State and we therefore expressly approve the Restatement formula.
Plaintiff landowner relies on Brown v. Bowers Construction Co., 236 N.C. 462, 73 S.E.2d 147 (1952); Gaither Corp. v. Skinner, 238 N.C. 254, 77 S.E.2d 659 (1953); and Quenby Corp. v. Frank H. Conner Co., 272 N.C. 208, 158 S.E.2d 18 (1967). The Gaither and Quenby decisions were based on the law as to joinder of parties, and therefore are not authoritative *279 for the proposition for which they are cited. Any support for plaintiff's position contained therein is merely obiter dictum. The Brown case, moreover, concerned a non-delegable duty assumed by contract and imposed by operation of law which defendant Construction Company sought unsuccessfully to escape by assignment to a subcontractor. That case is not authoritative on the question before us.
Defendant Reed Supply Company, on the other hand, relies on American Trust Co. v. Catawba Sales & Processing Co., supra (242 N.C. 370, 88 S.E.2d 233) and Board of Education v. Deitrick, 221 N.C. 38, 18 S.E.2d 704 (1942), as well as the Restatement of Contracts. The Trust Company case supports the proposition that a third person may sue to enforce a binding contract made for his direct benefit but not where the benefit to him is only incidental. In Deitrick, the general contractor attempted to join the materialman as codefendant in a suit by the landowner against the contractor for breach of contract. Since there was no privity between plaintiff landowner and the materialman, the motion for joinder was properly denied. All cases from other jurisdictions cited by Reed concern privity, and privity is not relevant to the determination of third party beneficiary problems in North Carolina American Trust Co. v. Catawba Sales & Processing Co., supra.
We must therefore analyze the facts to determine whether plaintiff landowner is a creditor beneficiary or merely an incidental beneficiary. The intention of the parties to the subcontract is of paramount importance. "As a general proposition, the determining factor as to the rights of a third party beneficiary is the intention of the parties who actually made the contract. The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts." 17 Am. Jur.2d, Contracts § 304. It is not sufficient that the contract does benefit him if in fact it was not intended for his direct benefit. Robins Dry Dock and Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927).
In our view the subcontract here was not intended for the benefit of the plaintiff landowner. Plaintiff benefits only incidentally or indirectly because performance of the subcontract was rendered in fulfillment of Reed's obligation to the general contractor. Hence, any benefit derived from the subcontract by the landowner would necessarily accrue indirectly, i. e., through the general contractor.
The Restatement itself contemplates that an owner in a construction contract be classified as a mere incidental beneficiary of the contract between the general contractor and the subcontractor; thus it provides that an owner would acquire "no right against the promisor or the promisee" in consequence thereof. Restatement of Contracts § 147, Illustration 1. The performance of the subcontractor is not given or received in discharge of the obligation of the general contractor to the owner, but rather in discharge of the subcontractor's own obligations to the general contractor.
Moreover, the text writers support this view. "A subcontractor, bound to the principal contractor to install the plumbing in C's proposed building, is not liable for breach to C, the owner. The promised performance is here to be rendered to the principal contractor." Simpson on Contracts § 116 at page 246. Accord, 4 Corbin on Contracts § 779D.
We therefore hold that plaintiff landowner in Case No. 69-CVS-41 is a mere incidental beneficiary of the construction subcontract between Reed and the general contractor. As such he cannot maintain against Reed a claim for damages for breach of the subcontract. It therefore follows as a matter of law that Reed's motion for summary judgment in Case No. 69-CVS-41 should have been allowed. Rule 56, Rules of Civil Procedure.

*280 SECOND CASE (69-CVS-46)
It is conceded that neither the general contractor (Da Pow Developers, Inc.) nor the subcontractor (Reed Supply Company) were licensed as a general contractor pursuant to G.S. § 87-1 et seq. The second case now under consideration presents for decision the following question: Was Reed Supply Company a "general contractor" under the definition contained in G.S. § 87-1 and thus required to be licensed? If the anwser to this question is yes, then Reed Supply Company cannot maintain an action either for enforcement or for breach of the subcontract between it and Da Pow Developers, Inc. "The purpose of Article 1 of Chapter 87 of the General Statutes, which prohibits any contractor who has not passed an examination and secured a license as therein provided from undertaking to construct a building costing $20,000.00 or more, is to protect the public from incompetent builders. When, in disregard of such a protective statute, an unlicensed person contracts with an owner to erect a building costing more than the minimum sum specified in the statute, he may not recover for the owner's breach of that contract. This is true even though the statute does not expressly forbid such suits. 53 C.J.S. Licenses § 59 (1948); 33 Am.Jur., Licenses § 68-72 (1941); Annot., Failure of artisan or construction contractor to procure occupational or business license or permit as affecting validity or enforcement of contract, 82 A.L.R.2d 1429 (1962); 5 Williston Contracts (Revised Edition 1937) § 1630; 6 Williston Contracts, Ibid. § 1766; 6A Corbin on Contracts §§ 1510-1513." Ryan Builders Supply v. Midyette, 274 N.C. 264, 162 S.E.2d 507 (1968).
G.S. § 87-1 reads in pertinent part as follows: "For the purpose of this article, a `general contractor' is defined as one who for a fixed price, commission, fee or wage, undertakes to bid upon or to construct any building, highway, sewer main, grading or any improvement or structure where the cost of the undertaking is twenty thousand dollars ($20,000.00) or more and anyone who shall bid upon or engage in constructing any undertakings or improvements above mentioned in the State of North Carolina costing twenty thousand dollars ($20,000.00) or more shall be deemed and held to have engaged in the business of general contracting in the State of North Carolina."
G.S. § 87-13 provides that any unlicensed person, firm or corporation who shall contract for or bid upon the construction of any of the projects or works enumerated in § 87-1, without first having obtained a license, or who shall attempt to practice general contracting in this State without a license "shall be deemed guilty of a misdemeanor and shall for each such offense of which he is convicted be punished by a fine of not less than five hundred dollars or imprisonment of three months, or both fine and imprisonment in the discretion of the court."
Where the Legislature defines a word used in a statute, that definition is controlling even though the meaning may be contrary to its ordinary and accepted definition. Carter v. Carter, 232 N.C. 614, 61 S.E.2d 711 (1950). Words and phrases of a statute "must be construed as a part of the composite whole and accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit." 7 Strong's N.C. Index 2d, Statutes § 5; State v. Spencer, 276 N.C. 535, 173 S.E.2d 765 (1970); Underwood v. Howland, Comr. of Motor Vehicles, 274 N.C. 473, 164 S.E.2d 2 (1968); Watson Industries v. Shaw, Comr. of Revenue, 235 N.C. 203, 69 S.E.2d 505 (1952). Criminal statutes, and statutes in derogation of the common law, must be strictly construed. State v. Ross, 272 N.C. 67, 157 S.E.2d 712 (1967); State v. Brown, 264 N.C. 191, 141 S.E.2d 311 (1965); Ellington v. Bradford, 242 N.C. 159, 86 S.E. 2d 925 (1955). This means that the scope of a penal statute may not be extended by implication beyond the meaning of its language *281 so as to include offenses not clearly described. State v. Spencer, supra; State v. Hill, 272 N.C. 439, 158 S.E.2d 329 (1967).
The rule requiring statutes to be construed to effectuate the legislative intent applies also to criminal statutes. State v. Humphries, 210 N.C. 406, 186 S.E. 473 (1936); State v. Brown, 221 N.C. 301, 20 S.E.2d 286 (1942). This Court, construing a criminal statute requiring the licensing of real estate brokers and salesmen, noted the criminal character of the statute and said: "For this reason, and for the further reason that it is a statute restricting to a special class of persons the right to engage in a lawful occupation, the act must be strictly construed so as not to extend it to activities and transactions not intended by the Legislature to be included." McArver v. Gerukos, 265 N.C. 413, 144 S.E.2d 277 (1965).
Under the foregoing principles of statutory construction, the common law definition of "general contractor" is irrelevant in face of the explicit statutory language. Decision here must therefore turn on the meaning of the specific words contained in the statutory definition. These words must be construed strictly in favor of the plaintiff because the statute carries criminal penalties and is in derogation of "the right to engage in a lawful occupation." Did the Legislature, by the use of the words "building", "improvement", and "structure", intend to require subcontractors who undertake to furnish labor and materials in excess of $20,000.00 to construct integral parts of a large building complex to be licensed as general contractors? The answer is no.
Under the subcontract in this case Reed Supply Company was required to "furnish and erect exterior and interior wall panels, wood floor system subfloor, roof sheathing, bridging, trusses. Furnish and install windows, doors, base, shoe, soffit trim, plywood closures, masonite siding and louvers. Furnish only roofing and felt. Furnish and install shelving, door locks, door knockers. Furnish and complete painting. Furnish only entrance door frame." A few minor items, including painting of the interior ceilings, were specifically excluded from the subcontract. It is apparent, and we think significant, that Reed did not undertake to construct a building or structure. Completion of the above items leaves much to be done before a building or a structure results. The words building and structure are synonymous. "They agree in meaning but differ slightly in application. `Structure' retains more frequently than the other the sense of something constructed, often in a particular way." Watson Industries v. Shaw, Comr. of Revenue, supra (235 N.C. 203, 69 S.E.2d 505). A building is defined as "an edifice * * * a structure"; and a structure is defined as "that which is built or constructed; an edifice or building of any kind." Black's Law Dictionary, 4th Ed. Rev. 1968; Brown v. Sikes, 188 S.C. 288, 198 S.E. 854 (1938). So when the words building and structure are strictly construed, in context with the remainder of G.S. § 87-1, they do not embrace parts or segments of a building or structure. They exclude any meaning the Legislature could have conveyed simply by adding the words "or any part thereof" following the word "structure" in line four of G.S. § 87-1.
The term "improvement" does not have a definite and fixed meaning. Cities Service Gas Co. v. Christian, 340 P.2d 929 (Okl.1959). "The word `improvement' is a relative and very comprehensive term, whose meaning must be ascertained from the context and the subject matter of the instrument in which it is used." 42 C.J.S. Improvement p. 416. The word is sometimes used to refer to any enhancement in value, particularly in relation to non-structural changes to land. Mazel v. Bain, 272 Ala. 640, 133 So.2d 44 (1961). But where, as here, it is used in context with the words building and structure, its meaning is otherwise. As used here it connotes the performance of construction work and presupposes the prior existence of some structure *282 to be improved. As used with reference to land, the word improvement presupposes the prior existence of the land itself. The construction in this case "started from scratch." There was no existing building or structure to be improved, and in our view the term "improvement" as used in G.S. § 87-1 has no application to the facts in this case. Black's Law Dictionary, supra; 42 C.J.S. Improvement supra; Masterson v. Atherton, 149 Conn. 302, 179 A.2d 592 (1962); Douglaston Realty Co. v. Hess, 124 App.Div. 508, 108 N.Y.S. 1036 (1908).
So, examining the statute in light of its purpose, we hold that Reed Supply Company was not a "general contractor" within the purview of G.S. § 87-1 et seq. and was therefore not required to be licensed. The protection of the public is not involved because the general contractor stands between the owner and the subcontractor. If the owner is damaged he has his remedy against the general contractor. After all, the general contractor and not the owner selects the subcontractors. It would serve no public policy intended by Chapter 87 of the General Statutes to hold a subcontractor to be a general contractor within the purview of G.S. § 87-1. Furthermore, if the Legislature had intended to include subcontractors in the class required to be licensed, it would have specifically so provided.
What, then, is the status of the unlicensed general contractor with reference to the counterclaim against Reed Supply Company which it sets up in its answer?
While Da Pow Developers, Inc., cannot enforce its contract against the owner by reason of its unlicensed status, it is not precluded on that account from enforcing the subcontract, or recovering damages for breach thereof, against Reed Supply Company. This is true because Reed Supply Company is not among the class of persons the Legislature intended to protect by enactment of G.S. § 87-1 et seq. The purpose of that enactment, as declared by Sharp, J., for the Court, in Bryan Builders Supply v. Midyette, supra, is "to protect the public from incompetent builders." The licensing statutes have no application to the rights and liabilities of contractors and subcontractors inter se where the public interest is not involved. The rule that contracts in contravention of public policy are not enforceable is based on the premise that no one can rightfully do "that which tends to injure the public or is detrimental to the public good." A. C. Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. 500 (1940). Even so, "if it definitely appears that enforcement of a contract will not be followed by injurious results, then, generally at least, what the parties have agreed to ought not to be struck down on the ground of public policy." 17 Am.Jur.2d, Contracts § 174. Here, no injury to the public is apparent from enforcement of the subcontract between the parties to it.
We therefore hold that Da Pow Developers, Inc., may not only defend against plaintiff's demands but may also assert all lawful counterclaims properly pleaded in its answer in this case (69-CVS-46).
The rights, if any, of Reed Supply Company against Da Pow Developers Company are not ripe for appellate review. Allegations of a fraudulent conveyance, which are denied, have not been passed upon in the trial court. The issue of priority of liens as between Reed Supply Company on the one hand and the Northwestern Bank and Provident Mutual Life Insurance Company of Philadelphia on the other has not been considered below. Since this case must be tried on its merits upon all issues properly raised by the pleadings, we refrain from further expression of opinion on these and other questions posed by this appeal.
These cases are remanded to the Superior Court of Orange County for further proceedings in accordance with this opinion.
Error and remanded.