For all the foregoing reasons, we affirm. AFFIRMED.

Karen Leigh SHOOK, By and Through her guardian ad litem, Wendy SHOOK, Plaintiff–Appellant,

v.

GASTON COUNTY BOARD OF EDUCATION, Defendant–Appellee,

v.

STATE OF NORTH CAROLINA; the North Carolina State Board of Education, Third Party Defendants–Appellees.

No. 88–3893.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1989.

Decided Aug. 15, 1989.

David B. Puryear, Jr. (Booth, Harrington, Johns & Campbell, Greensboro, N.C., on brief) for plaintiff-appellant.

James Boyce Garland, Sr. (Garland & Wren, Gastonia, N.C., on brief) for defendant-appellee.

Before WIDENER, Circuit Judge, and BUTZNER, Senior Circuit Judge, and HENDERSON, District Judge for

the District of South Carolina, sitting by designation.

WIDENER, Circuit Judge:

Karen L. Shook, by her guardian ad litem, appeals the grant of summary judgment in favor of the Gaston County Board of Education. The district court found that although the statute of limitations did not bar her claim, she lacked requisite standing. We are of opinion that the plaintiff has timely filed and further that she has standing to pursue her cause of action. We affirm in part and vacate and remand this case to the district court for further proceedings.

Karen, a mentally handicapped woman, brought this action, seeking reimbursement of education expenses pursuant to the Education of the Handicapped Act (E.H.A.), 20 U.S.C. § 1400 et seq. In October of 1976, Karen began attending public schools operated by the defendant in Gaston County. Due to psychological difficulties, Karen's doctors recommended, in January 1980, that she be placed in a private educational institution in Austin, Texas. On February 20, 1980, Karen was enrolled at the Brown Schools which provided a program of special education and related services, including a therapeutic residential setting. She attended the Brown Schools until the conclusion of the 1981–82 school year.

The Gaston County Administrative Placement Committee, an agency of the Gaston County Board of Education, in the meantime, held a meeting which Karen's parents attended on December 9, 1981 concerning Karen's placement pursuant to the E.H.A. By letter dated two days after the meeting, the Shooks were notified that the Placement Committee recommended that Karen be placed at Western Carolina Center. The letter further informed the Shooks of their right to appeal the decision.

The Shooks retained counsel, who was informed by counsel for the Board of Education that there would be no reimbursement by the Board for Karen's attendance at the Brown Schools. While at the Brown Schools, Karen's education was paid for by her parents' private funds as well as by insurance payments, mentioned later. The insurance in question is a group health insurance policy issued by Pilot Life Insurance Company in consideration of Shook's employment for the benefit of himself and his dependents. We also note that, although Karen is an adult, she is still eligible to receive funds for special therapeutic services under the terms of the policy because she continues to be disabled by reason of mental retardation.

The policy, as issued by Pilot Life, was in what we presume to be a more or less standard form. But, at the time of Shook's employment, the policy provisions with respect to mental and nervous disorders were changed so that Shook's policy was different from that of other employees. Shook's employer, Tultex Corporation, in the words of its Vice President for Personnel, "provided a special self-insurance plan for the direct benefit of Karen Leigh Shook, individually, to provide an available maximum lifetime benefit for special therapeutic services relating to mental and nervous disorders in the amount of $100,000." This change in coverage was made in the form of a letter from Tultex to Shook, which included the following language: "Tultex has elected to make an administrative change in your policy to provide the following coverage for your daughter, Karen: (1) increase to $100,000 the maximum lifetime benefit for treatment of mental and nervous disorders." So, as a result of the policy change, the coverage with respect to Karen's mental and nervous disorders was in favor of her by name rather than merely as a beneficiary as a result of being a dependent of Shook, and Tultex became obligated to perform the contractual obligation.

Karen reached age eighteen on February 9, 1984. A legal guardian was appointed in July of the same year, and her guardian ad litem filed this suit against the Board in 1986, seeking reimbursement for the depletion of her health insurance benefits used to pay for her education. Her parents had not previously pursued the claim in court. The district court agreed with Karen that the statute of limitations had been tolled

due to her minority and incompetency, yet granted summary judgment in favor of Gaston County, finding that Karen lacked standing as it was her parents, not Karen, who had sustained the injury. Karen appeals.[1]

The district court, in its Memorandum and Order, outlined the framework of the E.H.A. The E.H.A. provides public school districts with federal funding for the education of handicapped children so long as the State has in effect a policy that assures all handicapped children the right to a free appropriate public education. 20 U.S.C. § 1412(1); *Burlington School Committee v. Massachusetts Department of Education*, 471 U.S. 359, 368, 105 S.Ct. 1996, 2001–02, 85 L.Ed.2d 385 (1985); *Manecke v. School Board of Pinellas County, Florida*, 762 F.2d 912, 916–17 (11th Cir.1985), cert. den., 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986). A "free appropriate public education" by definition includes "special education and related services." 20 U.S.C. § 1401(18); *Manecke*, 762 F.2d at 916. Federal regulations provide that if necessary to give a handicapped child special education and related services, the State must place that child in a public or private residential program at public expense. 34 C.F.R. § 300.302; *Manecke*, 762 F.2d at 917.

The three-year statute of limitations in North Carolina within which to bring a reimbursement suit based on the E.H.A. is found under N.C.G.S. § 1–52(2). However, as the district court properly found in this case, that statute was tolled by Karen's infancy and incompetency pursuant to N.C. G.S. § 1–17(a) which allows a person who is within the age of 18 at the time the cause

of action accrues to bring suit within three years after the removal of the disability, in this case, upon reaching the age of majority. Thus, Karen's cause of action is not time barred as she timely filed after attaining her majority and having a guardian appointed. When a state statute is borrowed, as here, the federal court will also borrow the state rules on tolling. *Board of Regents v. Tomanio*, 446 U.S. 478, 483–86, 100 S.Ct. 1790, 1794–96, 64 L.Ed.2d 440 (1980).[2]

The district court, however, granted summary judgment in favor of the defendant. It found that Karen lacked standing because it was her parents who had suffered the monetary loss. The court found that Karen had not spent any of her own money on her education, nor could she show that she failed to receive an appropriate education because of Gaston County's refusal to reimburse her parents or the insurance company.

The argument of the Board with respect to the standing of Karen to bring suit is very narrow and rather curious.

The Board acknowledges that a "child who has reached majority and is not incapacitated can represent his own interest in claims not already barred by the statute of limitations." Brief p. 10, quoting from *Alexopulos*, 817 F.2d at 556. This is in accord with the reasoning of *Vander Malle*, to which we have previously referred, and which we follow, that both the parents and the child have a right to bring suits on account of default under the E.H.A.

The brief continues that "it may also be possible that a handicapped child without

---

1. The Board has filed no cross appeal, but argues that the judgment of the district court should be affirmed, even though there may be standing, because the statute of limitations had run. See *S.E.C. v. Chenery*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

2. The case of *Alexopulos v. San Francisco Unified School District*, 817 F.2d 551 (9th Cir.1987), is to the contrary on the point that the statute of limitations is tolled in such cases. While that court recognized that state statutes of limitations, when borrowed, usually carry with them state tolling provisions, it found that the appli-

cation of the tolling provision would be contrary to a federal policy that representatives of educationally handicapped children promptly assert the child's educational rights. We simply do not agree. We agree with the statement of the Second Circuit in *Vander Malle v. Ambach*, 673 F.2d 49, 52 (2d Cir.1982), that such a suit is properly maintained both by the child and its parents. That being true, the exercise of a state tolling provision in favor of the child should not deter the parents from bringing a suit at an earlier time.

representation of a parent or guardian may have standing to sue in his own name." Brief p. 10. This boils down to the contention that a child who is incapacitated by reason of a mental defect may not bring a suit such as this on his own behalf upon attaining majority, but a child who is not so incapacitated is able to prosecute his own claim. The logic of this argument simply escapes us, and we reject it without further discussion. Discriminating against a mentally incapacitated child was simply not within the contemplation of Congress, in our opinion.

This brings us to the last point in the case and the one upon which the district court rested its decision, that Karen was without standing: that she had no financial interest in the case.

While it is true that none of Karen's funds were used for her special education at the Brown Schools, the policy of insurance issued by Pilot Life and amended by Tultex was depleted in the amount of $64,198.22, and Karen's father paid $40,157.86 on the same account. Thus, the remaining insurance available for Karen was some $36,000 rather than the $100,000 policy limit provided for in the amended policy of self-insurance issued by Tultex.

It follows that if Karen had the right to demand of Tultex and Pilot Life reimbursement of any of her own funds which she might have expended on account of such special education, then she has standing in the financial sense to prosecute this suit under the E.H.A., for the E.H.A. provides that a child be furnished a "free, appropriate, public education" and the education furnished cannot be "free" if it diminishes the resources of the child, as here.

Fortunately, the law of North Carolina, which we apply in this case to determine Karen's standing in a financial sense, furnishes the answer to our problem.

*Vogel v. Reed Supply Company*, 177 S.E.2d 273, 277 N.C. 119 (1970), a case involving a third party beneficiary to a construction contract who was not in contractual privity with the party sought to be charged, adopted § 133 of the Restatement of Contracts. The Court said: "Restatement § 133 clearly states the law of this State and we, therefore, expressly approve the Restatement formula." 177 S.E.2d at 278. Restatement § 133 under the subject of Contractual Rights of Persons Not Party to the Contract, deals with the definition of donee, creditor, and incidental beneficiaries, which we abstract for the purpose of this opinion. If the purpose of the promisee in attaining the promise of performance is to make a gift of the performance to the beneficiary, then the beneficiary is a donee beneficiary. If the performance of the promise will satisfy an actual duty of the promisee to the beneficiary, then the beneficiary is a creditor beneficiary. If the beneficiary is neither a donee beneficiary nor a creditor beneficiary, then the beneficiary is an incidental beneficiary. So, third-party beneficiaries to contracts are classified by the Restatement into donee, creditor, and incidental.

Under Restatement of Contracts, § 136(1)(a), "[a] promise to discharge the promisee's duty creates a duty of the promisor to the creditor beneficiary to perform the promise."

Under § 133, Illustration 8 provides, "B promises A, for sufficient consideration, to furnish support for A's minor child, C, whom A is bound by law to support. C is a creditor beneficiary."

■ Since Shook was bound under North Carolina law to support his minor child, Karen, and since Pilot and Tultex promised Shook, for sufficient consideration, to pay the expenses for treatment of mental and nervous disorders such as those afforded at the Brown Schools and which were the obligation of Shook, it is apparent that under North Carolina law, as set out in the Restatement of Contracts, Karen would have had a right to sue Tultex and Pilot Life for any default in their obligations to her. We are, thus, of opinion that since Karen had standing under North Carolina law to sue Tultex and Pilot Life on account of any default in their obligations under the policy, the diminution in the remaining amount of the policy was a financial interest of Karen's, and she, thus, had standing

under Article III of the Constitution to prosecute her claim under the E.H.A.

The judgment of the district court is accordingly affirmed in part and vacated in part, and the case is remanded for action not inconsistent with this opinion.[3]

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

---

**3.** Because this case fits within Illustration 8 of § 133 of the Restatement, we need not decide whether or not Karen was also a donee beneficiary. We also need not decide who may be an incidental beneficiary, only that Karen was not such. Consistent with our holding is the case of *Seals v. Loftis*, 614 F.Supp. 302 (E.D.Tenn., 1985), which held that the parents of a handicapped child could sue for reimbursement of insurance proceeds used to pay an obligation which was a part of the free, appropriate, public education required by 20 U.S.C. § 1412(1). The only difference between *Seals* and this case is the question of who may be the plaintiff, which, as we have explained above, in our opinion is a matter of indifference.

Restatement of Contracts, 2d. was adopted in 1979 and rewrote § 133 as § 302, which reclassified beneficiaries from donee, creditor, and incidental to intended and incidental, but made no meaningful change which would affect us here. Accord: *Reidy v. Macauley*, 57 N.C.App. 184, 290 S.E.2d 746, 747 (1982). Significantly, Illustration 2 to § 302 is the same as Illustration 8 to § 133.

It is also worthy of note that *Williston on Contracts*, 3rd ed., Jaeger, § 356, analyzes the problem in the same manner as does the Restatement, as has been noted by the North Carolina court in *Vogel* 177 S.E.2d at p. 278.