**Robert David EMERY, Plaintiff–Appellant,**

v.

**ROANOKE CITY SCHOOL BOARD, Defendant–Appellee,**

and

**Roanoke City Public Schools, Defendant.**

No. 04–2411.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 26, 2005.

Decided Dec. 8, 2005.

**ARGUED:** Peter Duane Vieth, Wooten-hart, P.L.C., Roanoke, Virginia, for Appellant. Kathleen Shepherd Mehfoud, Reed Smith, L.L.P., Richmond, Virginia, for Appellee. **ON BRIEF:** John L. Cooley, Jr., Wootenhart, P.L.C., Roanoke, Virginia, for Appellant.

Before WILKINSON, WILLIAMS, and TRAXLER, Circuit Judges.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge WILLIAMS and Judge TRAXLER joined.

## OPINION

WILKINSON, Circuit Judge:

This case requires us to decide whether the plaintiff can obtain reimbursement for

educational expenses pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq. (1994). When a school district's educational choices for a disabled child violate the IDEA, the child's parents can unilaterally place him in an appropriate educational setting and seek reimbursement from the district. *See Florence County Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).

The district court dismissed this case on the ground that the statute of limitations applicable to the IDEA barred plaintiff's claim for reimbursement. We hold that the plaintiff has no standing to sue for reimbursement, because he has suffered no cognizable injury. We thus affirm the judgment of the district court, albeit on a different ground.

### I.

Plaintiff Robert David Emery seeks reimbursement under the IDEA from defendant Roanoke City School Board (RCSB), which operates Roanoke City Public Schools (RCPS). Plaintiff was born without disability on July 19, 1981. Sadly, however, he fell victim to a tragic accident as a nine-year-old boy. On March 30, 1991, a car struck him as he was playing at a friend's house, and he suffered a serious brain injury. He remained in hospitals until September 27, 1991. Plaintiff has had trouble with his memory, behavior, movement, and speech as a result of this accident.

RCPS determined that plaintiff was eligible for special education under the IDEA because he was both learning disabled and emotionally disabled. It thus developed an individualized education program (IEP) for plaintiff for the 1991–1992 school year. Plaintiff's father, Ralph Emery (Mr. Emery), consented to this educational plan, and RCPS sent him a notice of his proce-

dural rights in September, 1991. Pursuant to this IEP, in the fall of 1991, plaintiff began school in the program for emotionally disabled students at Raleigh Court Elementary School. It was quickly determined, however, that this program was not appropriate for him.

Plaintiff thus transferred to the Blue Ridge Education Center, a private school at the Lewis–Gale Psychiatric Center, in November, 1991. Mr. Emery consented to the transfer. Plaintiff did well at this school, which had a more structured environment. But he could not control his behavior and the staff felt he was too aggressive and dangerous. As a result, Blue Ridge expelled him at the end of the school year in June, 1992.

There is no indication that RCPS provided plaintiff with an IEP for the 1992–1993 school year. Mr. Emery has noted that a representative of RCPS told him that the school system had no educational recommendation for plaintiff and that he would have to find his son a placement on his own. Mr. Emery thus placed plaintiff in the Cumberland Hospital for Children and Adolescents at his own initiative. RCPS did not take part in this placement.

Plaintiff began attending school at Cumberland on October 8, 1992, and remained there until April 23, 1993. Following Cumberland, he started attending The Woods School on June 2, 1993. Plaintiff does not currently challenge RCPS's compliance with the IDEA after this date.

The crux of the parties' dispute is centered on the expenses incurred at Cumberland. Cumberland charged over $200,000 for plaintiff's six months in its facility. Mr. Emery's medical insurance from his employment at ITT Electro Optical Products provided $350,000 in lifetime medical benefits for family members, and he paid plaintiff's bills with the insurance. Thus,

plaintiff paid none of these expenses. His father's insurance plan no longer covers him, and he has his own insurance through Virginia Medicaid and is also eligible for Florida Medicaid. Plaintiff's present insurance coverage is not affected by the decrease in lifetime benefits in his father's insurance plan.

On several occasions in the 1990s, Mr. Emery and his counsel requested reimbursement for the Cumberland expenditures. None of his lawyers requested a due process hearing over plaintiff's educational placement for the 1992–1993 school year, as is allowed under the IDEA. On October 11, 1999, RCPS rejected a further claim for reimbursement in a letter responding to plaintiff's current counsel. This letter noted, inter alia, that the statute of limitations on the claim had expired.

Plaintiff's counsel thus requested a due process hearing. The parties stipulated to the key facts. On June 28, 2002, the hearing officer concluded that the statute of limitations applicable to the IDEA barred plaintiff's claim.

Plaintiff initiated this suit through his guardian following the hearing officer's resolution of the statute-of-limitations issue. RCSB filed a Rule 12(b)(6) motion to dismiss the claim because the statute of limitations had expired. The district court agreed with the hearing officer that the claim was time-barred and dismissed the case. Plaintiff appeals this dismissal.

## II.

Congress designed the IDEA with two purposes in mind. First, it wanted to give children with disabilities a "free appropriate public education" (FAPE) emphasizing "special education and related services." 20 U.S.C. § 1400(c) (1994).[1] Second, it sought to ensure that the rights of disabled children and their parents were protected. *Id.* Congress thus provided substantive rights to disabled children and gave children and their parents procedural rights. *See AW ex rel. Wilson v. Fairfax County Sch. Bd.,* 372 F.3d 674, 678 (4th Cir.2004).

A disabled child in any state that receives federal funds for special education has the substantive right to receive a FAPE. 20 U.S.C. § 1412(1). The state delivers the FAPE principally through an individualized education program (IEP), which is developed for each disabled child with the cooperation of local school representatives and the child's parents. *See id.* §§ 1401(a)(20), 1414(a)(5); *G ex rel. RG v. Fort Bragg Dependent Sch.,* 343 F.3d 295, 298 (4th Cir.2003). The IEP sets forth, among other things, the goals for the child's education, the services that will be provided to him, and the time period for these services. 20 U.S.C. § 1401(a)(20); *Fort Bragg,* 343 F.3d at 298–99.

The IDEA gives parents of disabled children several procedural protections. School districts are required to provide them with written notice of their procedural rights. 20 U.S.C. § 1415(b)(1)(D). The parental right most relevant in this case is the opportunity to challenge a child's educational placement in "an impartial due process hearing" conducted by the state or

---

1. The IDEA has been substantially amended at least twice since 1997. *See* Individuals with Disabilities Education Improvement Act of 2004, Pub.L. No. 108–446, Title I, 118 Stat. 2647; Individuals with Disabilities Education Act Amendments of 1997, Pub.L. No. 105–17, Title I, 111 Stat. 37. Because the relevant conduct in this case occurred before the amendments were in place, we only discuss the earlier IDEA sections. *See Sellers ex rel. Sellers v. Sch. Bd. of Manassas,* 141 F.3d 524, 526 n. 2 (4th Cir.1998) (refusing "to apply the [1997] amendments to conduct occurring before their enactment" and noting that other courts follow the same approach).

local educational agency. *Id.* § 1415(b)(2); *see also id.* § 1415(b)(1)(E). If parents are "aggrieved by the findings and decision made" at such a hearing, they have the subsequent right to bring a lawsuit in state or federal court. *Id.* § 1415(e)(2).

When a party files suit under § 1415(e)(2), the court "shall grant such relief as [it] determines is appropriate." *Id.* The IDEA does not authorize courts to grant monetary damages. *See Sellers ex rel. Sellers v. Sch. Bd. of Manassas,* 141 F.3d 524, 526–28 (4th Cir.1998). But, at the same time, courts can equitably reimburse parents for funds expended on their child's education because of the school district's failure to provide a FAPE. *Id.* at 527 (citing *Sch. Comm. of Burlington v. Dep't of Educ.,* 471 U.S. 359, 370, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)); *see also Florence County Sch. Dist. Four v. Carter ex rel. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) (reimbursement available for unilateral placement in private school if (1) district's proffered placement violated the IDEA and (2) parent's placement was appropriate).

### III.

A district court's grant of a Rule 12(b)(6) motion to dismiss is reviewed de novo. *Manning ex rel. Manning v. Fairfax County Sch. Bd.,* 176 F.3d 235, 237 (4th Cir.1999). We conclude that the district court properly dismissed this case, but reach our decision on an alternate basis. We hold that plaintiff does not have standing to pursue his claim for retroactive reimbursement, because he has suffered no non-speculative injury.

### A.

The Constitution restricts the federal courts to "Cases" or "Controversies." U.S. Const. art. III, § 2. A party's

standing to file suit is thus a constitutional limitation on the jurisdiction of the federal courts. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Since standing is jurisdictional, courts must independently ensure its presence. *White Tail Park, Inc. v. Stroube,* 413 F.3d 451, 460 (4th Cir.2005). The standing requirement is designed to guarantee that "the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate." *Friends for Ferrell Parkway, LLC v. Stasko,* 282 F.3d 315, 319 (4th Cir.2002).

There are three requirements to meet the "irreducible constitutional minimum of standing." *Steel Co.,* 523 U.S. at 102, 118 S.Ct. 1003 (internal quotation marks omitted). A plaintiff must show: "(1) he has suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends for Ferrell Parkway,* 282 F.3d at 320 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). The plaintiff bears the burden of proving each of these three elements. *Id.*

To show a sufficient personal stake, a plaintiff has to prove injury in fact. He must have suffered "an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 154 (4th Cir.2000) (en banc). The injury cannot be "conjectural or hypothetical." *Friends for Ferrell Parkway,* 282 F.3d at 320 (internal quotation marks omitted).

## B.

■ A school district's failure to provide a FAPE gives rise to distinct injuries. First, the child has suffered the core injury when he is not furnished with an appropriate education. In the context of this injury, therefore, the disabled child is the real party in interest. *See Doe v. Bd. of Educ.,* 165 F.3d 260, 263 (4th Cir.1998). While the IDEA affords parents procedural rights to compel the school district's compliance with the IDEA, these rights stem solely from their disabled child's inability to pursue a remedy due to his incapacity. *Id.* Thus, "parents and children are distinct legal entities under the IDEA." *Id.*

■ In this case, plaintiff has claimed an injury in fact because RCSB violated the IDEA by not providing him with an IEP for the 1992–1993 school year. But this core injury is no longer redressable here, and plaintiff does not contend otherwise. A plaintiff cannot recover compensatory or punitive damages for a violation of the IDEA. *See Sellers,* 141 F.3d at 526–28. Nor does plaintiff seek injunctive relief. He waited numerous years to bring this suit and is now past the age that would even qualify him to receive a FAPE. *See* 20 U.S.C. § 1412(2)(B); Va.Code Ann. § 22.1–213 (2003). Plaintiff also does not currently dispute RCSB's compliance with the IDEA after June 2, 1993, when he began attending The Woods School.

■ In addition to this core injury, the IDEA allows for reimbursement of funds that the child or his parents may have expended to provide the education that was the school district's responsibility. *Sch. Comm. of Burlington,* 471 U.S. at 370, 105 S.Ct. 1996. This injury is a subsidiary of and dependent upon the child's failure to receive a proper education under the IDEA. *See Carter,* 510 U.S. at 15, 114 S.Ct. 361. Standing doctrine requires that reimbursement should flow only to those who actually expend resources, whether it be the *parents, see, e.g., Bernard v. Sch. Bd. of Norfolk,* 58 F.Supp.2d 669, 672–75 (E.D.Va.1999), or the *child, see, e.g., Shook ex rel. Shook v. Gaston County Bd. of Educ.,* 882 F.2d 119, 122–23 (4th Cir.1989). In the usual case, the parents of the disabled child will be the appropriate ones to seek reimbursement because they will have incurred the expense and suffered the subsequent monetary injury. This explains why the Supreme Court has noted both that parents who change their child's placement "do so at their own financial risk," *Sch. Comm. of Burlington,* 471 U.S. at 373–74, 105 S.Ct. 1996, and that parents can only obtain reimbursement if the school district actually violated the IDEA, *Carter,* 510 U.S. at 15, 114 S.Ct. 361.

■ Plaintiff here challenges the failure of RCSB to provide reimbursement for the Cumberland expenses. But he has failed to prove he satisfies the constitutional requirement that he suffer an injury in fact with regard to this subsidiary injury. Crucially for the purposes of standing, he suffered no out-of-pocket loss himself for the services that Cumberland provided. He paid no money for the educational expenses incurred during the 1992–1993 school year. In fact, Mr. Emery's medical insurance provided by his employer paid the Cumberland expenses. Plaintiff has failed to show how awarding him this amount would be anything other than a windfall.

Plaintiff was in no way shortchanged by the use of proceeds from his father's medical insurance policy to pay Cumberland's bills. Plaintiff has not, for example, shown that he failed to obtain appropriate care as a result of any diminution in his father's lifetime insurance benefits. And his current insurance coverage is distinct from

the medical insurance used to pay Cumberland. Any payment to Cumberland under his father's policy has not lessened the benefits plaintiff enjoys under his current plan.

Our decision in *Shook* is instructive. *Shook* was a unique IDEA case in which the child had actually expended her own resources. 882 F.2d at 122–23. In that case, the plaintiff, a disabled woman, sued a school board in order to obtain retroactive reimbursement for expenses incurred at a private school when she was a child. Her father's employer had provided her "a special self-insurance plan" with a lifetime benefit of $100,000. *Id.* at 120. It was made out directly to her for her special therapeutic services. At the time of the litigation, she still qualified to receive benefits under the plan. *Id.* The court held that she had Article III standing because the expenses paid to the private school through her insurance plan diminished the amount of future benefits she could receive from it. *Id.* at 122–23.

In contrast, the relevant insurance in this case belonged solely to plaintiff's father. Any decrease in lifetime benefits will not affect plaintiff, as it would the plaintiff in *Shook*, because he no longer is covered by the insurance that paid his Cumberland expenses. Since plaintiff has no legally cognizable injury in fact, he has no standing to sue for reimbursement in this case.[2]

### IV.

In most instances, parents and their disabled child will jointly bring suit under the

IDEA in diligent fashion. A disabled child will be able to require a school district to provide him a FAPE when he can still realize its benefits, and parents who incur costs will be able to obtain appropriate reimbursement. In this case, however, plaintiff sought to fasten a substantial obligation on a public school district long after the fact. This delay proved detrimental to his claim, because he no longer had an interest in seeking injunctive relief to compel a suitable education. And his parents could no longer seek reimbursement for their expenses because of the applicable statute of limitations. *See supra* note 2. We are not free to relax the constitutional requirements of standing or statutory limitations periods in order to keep a school district obligated for events that occurred so many years ago. For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

### In re CHARCO, INCORPORATED, Debtor.

---

2. The statute of limitations further bars plaintiff's parents from requesting a due process hearing for retroactive reimbursement. A cause of action in an IDEA case accrues when the plaintiff knows of "an allegedly faulty IEP or a disagreement over the educational choices that a school system has made for a student." *R.R. ex rel. R. v. Fairfax County Sch. Bd.,* 338 F.3d 325, 332 (4th Cir.2003).

As such, the cause of action in this case accrued, at the very latest, on June 2, 1993, at which point plaintiff had completed his time at Cumberland without an IEP. The applicable statute of limitations gave his parents one year from this date to request a due process hearing. *See Manning,* 176 F.3d at 238–39 & n. 2. They failed to do so and their opportunity has thus expired.